**DELTA ELECTRIC CONSTRUCTION COMPANY, Inc., Appellant,**

v.

**CITY OF SAN ANTONIO, Appellee.**

**No. 14753.**

Court of Civil Appeals of Texas.

San Antonio.

Jan. 29, 1969.

Rehearing Denied Feb. 26, 1969.

George W. Krog, San Antonio, for appellant.

Howard C. Walker, Sawtelle, Goode, Troilo, Davidson & Leighton, John W. Davidson, San Antonio, for appellee.

KLINGEMAN, Justice.

Appeal by Delta Electric Construction Company, Inc., hereinafter called "Delta," from a declaratory judgment rendered in the District Court in which the Court determined and declared that a contract for the erection of certain improvements to the water works system of the City of San Antonio, hereinafter called "City," between Delta and the Water Works Board of Trustees of San Antonio, herein called "Water Board," dated May 14, 1968, was null and void. The trial court made findings of fact and conclusions of law, but since the evidence consists of stipulations and exhibits, such findings will not be detailed herein but will be discussed under the appropriate points.

On May 26, 1925, City of San Antonio purchased the water works system from private ownership through issuance of $7,-000,000 water revenue bonds to the seller, which were secured by a first mortgage deed of trust of the City to St. Louis Union Trust Company, which instrument, among other things, vested the possession, management and control of the water works system in the Water Works Board of Trustees as long as the bonds remained outstanding and unpaid, pursuant to the provisions of Art. 1109a, Vernon's Ann.Civ.St. Thereafter, in 1957 the City issued $2,178,000 in water revenue refunding bonds, by ordinance which vested the control, management and operation of its water works system in the Water Board during such time as the re-

funding bonds, or any additional bonds issued thereunder, were outstanding and unpaid.

Delta is a Texas corporation of which Rex E. Shullanberger is president and the owner of one-third of the shares of stock of such corporation. On August 26, 1965, the City Council of the City of San Antonio appointed Rex E. Shullanberger to be a member of the Electrical Examining and Supervising Board of the City of San Antonio, hereinafter called the "Electrical Board," to fill an unexpired term due to end July 31, 1966. Shullanberger took the prescribed oath and served in this position until October 5, 1967, when he was reappointed to said Board by ordinance of the City of San Antonio to serve until July 31, 1969. On May 14, 1968, Delta was awarded a contract to construct the improvements involved. On such date Shullanberger was a member of the Electrical Board. Such contract was awarded under sealed bids in compliance with the Water Board's procedure in connection therewith and Delta was the lowest bidder for such work. It was stipulated by the parties that Shullanberger as a member of the Electrical Board did not in any manner influence the advertising, pre-bid procedure, approval, or award by the Water Board of its contract with Delta. The Water Board, its members, and management were unaware of Shullanberger's membership on the Electrical Board until advised by a third party of this fact, approximately one month after the contract was awarded. The City and the Water Board thereafter advised Delta that performance of such contract was suspended pending a judicial determination as to whether a conflict of interest existed which would make the contract arrangement either void or voidable, and if voidable the contract was cancelled.

The City in its action for declaratory judgment asserted that Shullanberger is an officer of the City; that Delta in contracting with the Water Board contracted at law with the City; that Delta was prohibited by law from contracting with the Water Board and the City, because Shullanberger is an officer and part owner thereof; that a conflict of interests exists; that the contract in question was void as a matter of law or, alternatively, if not void, had been legally voided. These contentions are supported by the trial court's findings of fact and conclusions of law.

Delta asserts three basic contentions on this appeal: (1) the contract was not made with the City; (2) Delta's president was not an officer or employee of the City of San Antonio; (3) no conflict of interests existed under the applicable conflicts of interest statutes or charter provisions.

Delta in support of its contention that the contract is not a contract with the City, asserts that the City was not a party to such contract, that the City is not obligated under such contract, that it was not approved by ordinance of the City, as required under certain charter provisions, that the Water Works Board has full management and control of the water works system, and that the Water Works Board is such a legal entity as can sue and be sued.

The status of the Water Board has been the subject of two previous lawsuits in this Court. Sifford v. Water Works Board of Trustees, Tex.Civ.App., 70 S.W.2d 476 (1934, writ ref'd), involved in suit against the Water Works Board of Trustees by Sifford for personal injuries suffered by him. The trial court sustained a general demurrer to Sifford's petition on the grounds that such suit could not be maintained against the Water Works Board of Trustees as such. This Court affirmed the trial court's decision and discussed in some detail the 1925 First Deed of Trust Mortgage hereinbefore referred to. The Court in its opinion stated: "The property is owned by the city, and the department of water is as much under the control and management of the city, through its trustees, as is the department of taxation, streets, police, and fire, except in some particulars stated in the deed of trust. It has been definitely settled by the decisions

of different states of the Union that departments of the city created and acting in a similar way to that of the water board of the city of San Antonio could not be held liable for debt or tort, but that the city, if any one, was the party liable under such claims."

Thereafter, this Court had before it San Antonio Independent School Dist. v. Water Works Board of Trustees, Tex.Civ.App., 120 S.W.2d 861 (1938, writ ref'd), a suit to determine whether the water works system was subject to taxation by the San Antonio Independent School District or was tax exempt. The Court held the water works exempt from taxation, and that the Water Works Board of Trustees created by the City of San Antonio in the trust agreement of 1925 was an agent of the City, whose possession and holding of property constituted a possession and holding by the City. A somewhat analogous case was Guadalupe-Blanco River Authority v. Tuttle, 171 S.W.2d 520 (Tex.Civ.App.—San Antonio 1943, writ ref'd w. o. m.), but which involved the Board of Trustees of the San Antonio Electric and Gas System. The Court in its opinion discussed the Sifford case and noted that it had examined the record in the Sifford case and that from such examination it found that the powers of the Water Board were conferred by the same process as those by which the Board of Trustees of San Antonio Electric and Gas System were conferred and that the powers were substantially the same. This Court held that the Board of Trustees appointed by City ordinance to control and operate the utilities system purchased by the City, until revenue bonds issued for purchase thereof should be paid, was merely the agent of City and that as such the Board could not maintain a suit challenging the validity of a contract by which City leased part of the utility property to the conservation and reclamation district with option to purchase. Justice Norvell in a concurring opinion said: "In the legal sense, the appellees are not trustees at all. As a board they constitute a department and agency of the City to take charge of and operate for the City its gas and electric system. Sifford v. Waterworks Board of Trustees, Tex.Civ.App., 70 S.W.2d 476."

There are other factors which point out that the Water Board is an agency of the City: (a) Members of the Water Board are appointed by the City Council; (b) § 27(a) of the 1957 ordinance provides for participation of the City Manager in meetings of the Board; (c) § 27(b) provides that the Water Board of Trustees shall be the City's agent to collect sanitation charges levied by the City when requested to do so; (d) § 27(c) provides that the Board when expending funds for improvements must follow the provisions of the City Charter and the laws of Texas relating to "notice to bidders, advertisement thereof, requirements as to the taking of sealed bids based upon specifications for such improvements or purchase, the furnishing of surety bonds by contractors and the manner of letting contracts * * *." (e) § 28 of such ordinance provides that "The City acting through the Board of Trustees, shall keep full and proper books of records and account * * *." (f) § 29 provides, "The City covenants and agrees that at all times it will insure and keep insured through the Board of Trustees all property subject to the lien hereof * * *."

We hold that the Water Board is an agency and department of the City and therefore the contract in question was a contract with the City.

Delta's contentions that its president was not an officer or employee of the City, and that no conflict of interest existed under the conflict of interest statutes of this State and conflict of interest provision of the City Charter, will be discussed together. In support of its contention that its president was not an officer or employee of the City at the time of the execution of the contract, Delta asserts that members of the Electrical Board are not subject to the City's classified civil service, and that under § 69 of the City Charter all appoin-

tive officers and employees of the City are subject to civil service except certain groups which include "(b) Persons who are appointed or elected by the Council pursuant to this Charter; * * * (f) Persons, firms, corporations, associations, foundations or other organizations whose services may be specially engaged for professional, investigative, consultative, or other special services * * *." Delta asserts that members of the Electrical Board fall under category (f) and are not officers or employees of the City. Category (f) would more logically apply to persons such as an auditor employed to do a special audit, a financial advisor for sale of bonds, a consulting engineer employed for a specific contract, etc., and not to a person who exercises governmental functions. We do not think the fact that members of the Electrical Board are not subject to the City's classified civil service is determinative of the question of whether they are officers of the City. Members of the Electrical Board could fall under category (b), since appointments must be approved by the City Council.

Delta further asserts that the provisions of the City Charter establish that members of the Electrical Board are neither officers nor employees of the City, and cite in support thereof § 160 of the Charter.[1] One of the factors in determining whether a person is an officer is whether he exercises governmental functions for the benefit of the public. It is to be noted that § 49 of the City Charter[2] contemplates that members of certain boards, including the Electrical Board, are to exercise municipal functions.

The Supreme Court of Texas in Kimbrough v. Barnett, 93 Tex. 301, 55 S.W. 120, approved the following definition of an office: "The term 'office' is defined by Mr. Mechem, in his work on Public Officers (section 1), thus: 'Public office is the right, authority, and duty created and conferred by law, by which, for a given period, either fixed by law, or enduring at the pleasure of the creating power, an individual is invested with some portion of the sovereign functions of the government, to be exercised by him for the benefit of the public.' The correctness of this definition is nowhere questioned, so far as we know, and it is useless to add supporting authorities."

In the case of Knox v. Johnson, 141 S.W.2d 698, 700 (Tex.Civ.App.—Austin 1940, writ ref'd), the Court quoted with approval from 53 A.L.R. 595, as follows: "It may be stated, as a general rule deducible from the cases discussing the question, that a position is a public office when it is created by law, with duties cast on the incumbent which involve an exercise of some portion of the sovereign power and in the performance of which the public is concerned, and which also are continuing in

1. "Section 160. OFFICERS TO HOLD OVER UNTIL THEIR SUCCESSORS ARE APPOINTED AND QUALIFIED. Whenever under the provisions of this Charter any officer of the City, judge or member of any board or commission is appointed for a fixed term, such officer, judge or member shall continue to hold office until his successor is appointed and qualified."

2. "Section 49. BOARDS, COMMISSIONS, COMMITTEES, AND AUTHORITIES. Boards, commissions, committees, and authorities shall not be established to administer municipal functions of the City; provided, however, that this section shall not apply to (1) the Board of Trustees of the San Antonio Public Library, (2) the Municipal Civil Service Commission, (3) The Planning Commission, (4) the Board of Equalization, (5) boards of examiners and/or appeals established by ordinance to administer the provisions of building, electrical and plumbing codes, and (6) boards, commissions and authorities established under the provisions of the laws of Texas. The Council by ordinance may create boards, commissions or committees to assist in only an advisory capacity the heads of municipal departments in the performance of their duties. The members of any such boards, commissions or committees shall be appointed by the Council on recommendation of the City Manager, and shall receive no compensation from the City."

their nature and not occasional or intermittent; while a public employment, on the other hand, is a position which lacks one or more of the foregoing elements."

■ Applying the above criteria to members of the Electrical Board, we find that under the provisions of the electrical ordinance of the City of San Antonio (a) such Board was created by ordinance of the City, (b) the members are appointed by the City Council upon recommendation of the City Manager, (c) the Board passes upon the qualifications of all applicants for certificates of electrical licenses, (d) the Electrical Board may review all decisions of the Chief Electrical Inspector and his assistants, (e) the Electrical Board may alter, amend, or revoke actions or decisions of the Chief Electrical Inspector; (f) all disputed questions pertaining to the installation of electrical wiring devices and equipment should be referred to the Electrical Board by the Electrical Inspector; (g) the Electrical Board has power to suspend or revoke the certificate or licenses of persons found guilty of certain practices; (h) the members of the Electrical Board serve for a fixed term of office; (i) members of the Electrical Board take an oath of office; (j) members of the Electrical Board receive a fixed compensation paid by the City. It would appear that the Electrical Board performs sovereign functions of the City for the benefit of the public, and it is our opinion that members of the Electrical Board are officers of the City of San Antonio.

■ Delta also contends that since the term of office of an Electrical Board member is three years, if the members of the Electrical Board are officers of the City of San Antonio, either such appointments are void or the ordinance creating the Electrical Board is unconstitutional and void because it would be in contravention of Art. 16, § 30 of the Constitution of Texas, Vernon's Ann.St., which provides in part: "The duration of all offices not fixed by this Constitution shall never exceed two years; * * *."

This contention was also made in San Antonio Independent School District v. Water Board Trustees, supra, but this Court held that such contention was not sound, and that members of the Water Board were not such constitutional officers as came within this provision, the Court making a distinction between proprietary and governmental functions of the City. In McQuillin, Municipal Corporations, Vol. 10, § 29.97, it is stated that the fact that the City was engaged in its proprietary as distinguished from its governmental function does not render inapplicable statutory limitations and restrictions on the part of the municipality to contract with its officers.

San Antonio Independent School District v. State, 173 S.W. 525 (Tex.Civ.App.— San Antonio 1915), involved an attack on the constitutionality of the act creating the San Antonio Independent School District because the terms of the trustees were fixed for six years instead of two years as provided for under Art. 16, § 30, of the State Constitution. This Court held that while such act was not effective to create six-year terms for the trustees, such act was not void and that the trustees elected thereunder by election in April of 1913 formed the de jure San Antonio School Board until the expiration of their constitutional term of two years, or when their successors are duly elected and qualified. In the opinion, the Court stated: "Holding that the part of the local act of 1913, constituting the school board of San Antonio, is unconstitutional in so far as it endeavors to increase the tenure of office to more than two years, does not necessarily carry with it the decision that the whole act is unconstitutional and void, for where part of a statute is unconstitutional and the remainder is constitutional, if the two parts can be possibly separated courts should do so, and not permit the invalid part to destroy the whole law. If, after the elimi-

nation of the invalid part of the law, there remains an intelligible and valid statute capable of being placed in execution and conforming to the general purpose and intent of the Legislature, the law will not be destroyed, but held to be valid and binding except as to the excised part. Presser v. Illinois, 116 U.S. 252, 6 Sup.Ct. 580, 29 L.Ed. 615; Willcox v. Consolidated Gas Co., 212 U.S. 19, 29 Sup.Ct., 192, 53 L.Ed. 382, 48 L.R.A.(N.S.), 1134, 15 Ann.Cas. 1034."

It is to be noted that at the time the contract in question was executed, appellant's president was serving for a term of less than two years. The City asserts that if the appointment of the members of the Electrical Board for three years is a violation of the Constitution, which it denies, the effect would be to impress upon members of the Electrical Board a de facto status, and that Shullanberger and other members of the Electrical Board would have the status of de facto officers of the

City and this status would continue until directly attacked, citing in support thereof: Aulanier v. Governor, 1 Tex. 653 (1846); Forwood v. City of Taylor, 208 S.W.2d 670 (Tex.Civ.App.—Austin 1948, aff'd on other grounds).

It is our opinion that Delta's contentions that the ordinance establishing the Electrical Board of the City of San Antonio is unconstitutional and void, and that Shullanberger's appointment was void, are without merit.

■ Delta contends that unless a contract is made "by the city" (Article 373, V.A.P.C.) [3] "consideration of which is paid from the city treasury" (Article 988, V.A. C.S.) [4] or is "with the City" or "with the Council" (Section 141, City Charter) [5] the conflict of interest statutes and Charter provision have no application to it. It is our opinion that the contract involved was a contract with the City. Delta asserts that since it was stipulated that Delta's president did not in any way influence the

3. Article 373, Vernon's Annotated Penal Code

"If any officer of any county, or of any city or town shall become in any manner pecuniarily interested in any contracts made by such county, city or town, through its agents, or otherwise, for the construction or repair of any bridge, road, street, alley or house, or any other work undertaken by such county, city or town, or shall become interested in any bid or proposal for such work or in the purchase or sale of anything made for or on account of such county, city or town, or who shall contract for or receive any money or property, or the representative of either, or any emolument or advantage whatsoever in consideration of such bid, proposal, contract, purchase or sale, he shall be fined not less than fifty nor more than five hundred dollars. Acts 1874, p. 48."

4. Article 988, · Vernon's Annotated Civil Statutes

"No member of the city council shall hold any other employment or office under the city government until he is a member of said council, unless herein otherwise provided. No member of the city council, or any other officer of the corporation, shall be directly or indirectly interested in any work, business or

contract, the expense, price or consideration of which is paid from the city treasury, or by an assessment levied by an ordinance or resolution of the city council, nor be the surety of any person having a contract, work or business with said city, for the performance of which security may be required, nor be the surety on the official bond of any city officer. Acts 1875, p. 154; G.L. vol. 8, p. 526."

5. City Charter, Section 141. "INTEREST IN CITY CONTRACTS PROHIBITED. No officer or employee of the City shall have a financial interest, direct or indirect, in any contract with the City, or shall be financially interested, directly or indirectly, in the sale to the City of any land, materials, supplies or service, except on behalf of the City as an officer or employee. Any willful violation of this section shall constitute malfeasance in office, and any officer or employee guilty thereof shall thereby forfeit his office or position. Any violation of this section, with the knowledge, expressed or implied, of the person or corporation contracting with the Council shall render the contract involved voidable by the City Manager or the Council."

award of such contract, no conflict of interest existed. The fact that no influence was exercised is not determinative of whether the contract was violative of the conflict of interest ordinance and statutes. In City of Edinburg v. Ellis, 59 S.W.2d 99 (Tex.Comm.App. Section A 1933, opinion approved), the Court stated: "It is the general rule that municipal contracts in which officers or employees of the city have a personal pecuniary interest are void. 44 C.J. pp. 89 and 90; 6 R.C.L. pp. 739 and 740; Meyers v. Walker (Tex.Civ.App.) 276 S.W. 305. This rule is held to apply to members of the city council. It has long been the public policy of this state to prohibit officers of a city from having a personal pecuniary interest in contracts with the city and this policy is specifically expressed in both the penal and civil statutes. See article 373, Penal Code, and article 988, R.C.S. 1925. * * * The foregoing rule rests upon sound public policy. Its object is to insure to the city strict fidelity upon the part of those who represent it and manage its affairs. The rule prohibiting public officers from being interested in public contracts should be scrupulously enforced." See also Bexar County v. Wentworth, 378 S.W.2d 126 (Tex.Civ. App.—San Antonio 1964, no writ); Starr County v. Guerra, 297 S.W.2d 379 (Tex. Civ.App.—San Antonio 1956, no writ).

In McQuillin, Municipal Corporations, Vol. 10, § 29.97, p. 467 et seq., it is stated: "It is well settled that municipal officers cannot be interested in contracts of any character with the municipality * * * In many states and cities this has been adopted by statutory or charter provisions, which are, however, mostly declaratory of the rule at common law * * * Although under some statutes and charters, such an agreement is voidable only, it is generally held that whenever a public officer enters into a contract, the execution of which may make it possible for his personal interests to become antagonistic to his faithful discharge of a public duty, such contract will be held void as against public policy. It is

the existence of such interest which is decisive and not the actual effect or influence, if any of the interest: if there is a potential conflict, the contract is invalid."

 We hold that Delta's president was an officer of the City of San Antonio within the meaning of the conflict of interest provision of the City Charter and Art. 373, V.A.P.C., at the time of the execution of the contract; that such contract was in contravention of such Charter provision and the State Statute and is against public policy, and that the trial court did not err in declaring such contract null and void.

All of Delta's points of error are overruled. The judgment of the trial court is affirmed.