

# The Attorney General of Texas

JIM MATTOX
Attorney General

Supreme Court Building
P. O. Box 12548
Austin, TX. 78711- 2548
512/475-2501
Telex 910/874-1367
Telecopier 512/475-0266

714 Jackson, Suite 700
Dallas, TX. 75202-4506
214/742-8944

4824 Alberta Ave., Suite 160
El Paso, TX. 79905-2793
915/533-3484

1001 Texas, Suite 700
·ston, TX. 77002-3111
./223-5886

806 Broadway, Suite 312
Lubbock, TX. 79401-3479
806/747-5238

4309 N. Tenth, Suite B
McAllen, TX. 78501-1685
512/682-4547

200 Main Plaza, Suite 400
San Antonio, TX. 78205-2797
512/225-4191

An Equal Opportunity/
Affirmative Action Employer

August 14, 1986

Honorable W. N. Kirby
Commissioner
Texas Education Agency
201 East 11th Street
Austin, Texas  78701

Opinion No:   JM-531

Re:   Current validity of a lease entered into by a school district in 1950

Dear Mr. Kirby:

You request advice on the validity of a lease agreement entered into in 1950 by the Board of Trustees of the Fredericksburg Independent School District [hereinafter the "Board"]. The lease is between the Board and a lessee. It provides that the Board lease a designated tract of the school district's property for a monthly amount of $60.00 for 50 years in exchange for the lessee's agreement to expend at least $30,000 on an office building to be erected on the property. It is also relevant to your inquiry that the lease agreement contained an unconditional right on the part of the lessee to assign the agreement to a third party.

In 1973, more than 20 years later, the lessee assigned his interest in the lease agreement, with the Board's approval, to the president of the Board. That individual, the "assignee," remained a school trustee until approximately 8 months after the assignment when he resigned.

You also inform us that at the time of the assignment in 1973, the Board was renting office space in the building. The Board continued to rent space after the assignment from the assignee until the rent was raised to an unaffordable amount. Moreover, you indicate that the school district, through the Board, in all likelihood will never locate an instructional facility on the property. The lease, 30 years from the date it was entered into, is hindering the school district from obtaining the best and highest use from its property.

In that regard, you have asked the following questions:

> 1. Whether the prior [Board] had the authority to lease the school property under such terms as are contained in the lease?

2. Whether the [Board] is estopped from attacking the lease in light of the fact that the district has accepted rentals for 35 years without attempting to set the lease aside?

3. Whether the assignment of the lease in 1973 to a then-current member of the [Board] affects the validity of the lease?

4. Whether the school district has any right to the rentals received by the lessee and assignee if the lease is in fact illegal?

These questions you have presented contain issues of fact which must be decided before a complete resolution of the problem may be addressed. This office does not resolve factual questions in the opinion process. See, e.g., Attorney General Opinion JM-486 (1986); JM-394 (1985). However, we will address those matters regarding strictly legal issues in order to provide some guidance in this matter.

It is well settled law in this state that the board of trustees of an independent school district has exclusive power to manage and control school property. Trustees of Independent School District of Cleburne v. Johnson County Democratic Executive Committee, 52 S.W.2d 71, 72 (Tex. 1932); see also Attorney General Opinion M-1047 (1972). The Board's discretion is limited to the extent that it will not use this power to impinge upon the district's governmental purpose, that is, operating a public school. River Road Neighborhood Association v. South Texas Sport, No. 04-84-00206-CV (Tex. App. - San Antonio 1986, rehearing granted) (not yet reported); Royse Independent School District v. Reinhardt, 159 S.W. 1010 (Tex. Civ. App. - Dallas 1913, writ ref'd); Attorney General Opinion M-1047 (1972). This reasoning is consistent with the rule that the governmental powers or functions of a government or governmental agency can never be abdicated or bargained away. See Clear Lake City Water Authority v. Clear Lake Utilities District, 549 S.W.2d 385 (Tex. 1977); see also Banker v. Jefferson County Water Control and Improvement District, 277 S.W.2d 130, 134 (Tex. Civ. App. - Beaumont 1955, writ ref'd n.r.e.).

The question of whether a particular action of a school board impinges upon the district's governmental purpose, that is, operating a public school, is essentially a question of fact. See River Road Neighborhood Association v. South Texas Sports, No. 04-84-00206-CV (Tex. App. - San Antonio 1986, no writ) (not yet reported); Royse Independent School District v. Reinhardt, 159 S.W. 1010 (Tex. Civ. App. - Dallas 1913, writ ref'd).

It is argued by the present Board that the lease is presently impinging upon the Board's authority to perform its governmental function because the Board is unable to take substantial steps to increase the revenue being generated from the property. We have not found any authority supporting the proposition that a governmental body is entitled to renege on a valid contract simply because it is financially advisable to do so. Cf. City of Big Spring v. Board of Control, 404 S.W.2d 810 (Tex. 1966). As indicated above, these factual questions are beyond the scope of this office's authority.

The Board also cites South Texas Sports, supra, in support of its position that the 50-year lease agreement should be declared invalid. In that case a school board entered into a lease agreement which had a potential maximum duration of 50 years. The lease was between a professional football club and a school district for certain property owned by the school district consisting of an athletic stadium. The stadium had been primarily used as a place for athletic contests involving schools of the district. The football club, lessee, leased the stadium to play its home games. Id. The Court of Civil Appeals held that the lease was invalid because it effectively destroyed the power of the district to manage and control the school property for school purposes.

The court declared the lease involved in South Texas Sports invalid because the record revealed that although the lease provided that the club may use the stadium except when the school district needed the facility, scheduling conflicts were in fact resolved in favor of the lessee. The school district's use of the facility was at the discretion of the lessee. Unlike the facts presented to us, the record supplied to the court was sufficient to determine whether the 50-year lease impinged upon the school district's governmental function. Moreover, the court did not conclude that because the lease agreement would bind the school district for a period of 50 years it was void as contrary to public policy.

In response to your third question, it seems clear that the 1973 assignment to the then-current member of the Board did not affect the validity of the lease. The assignment merely created a contractual relationship between the Board and its president. It was this contractual relationship which is void and is against public policy. Accordingly, the relationship between the original lessee and the Board was unaffected by the assignment.

The lease agreement gave the lessee the "unconditional" right to assign his interest in the lease. Therefore, the Board's approval was not necessary to complete the transaction between the lessee and the then-current member of the Board. The assignment was made prior to the enactment of article 938b of V.T.C.S. Therefore, the validity of the assignment turns on whether it falls within the common law

prohibition which bars school districts from <u>contracting</u> with any entity in which a trustee has a pecuniary interest, no matter how small. See <u>Meyers v. Walker</u>, 276 S.W. 305 (Tex. Civ. App. - Eastland 1925, no writ); <u>City of Edinburg v. Ellis</u>, 59 S.W.2d 99 (Tex. Comm'n App. 1933); <u>Delta Electric Construction Co. v. City of San Antonio</u>, 437 S.W.2d 602 (Tex. Civ. App. - San Antonio 1969, writ ref'd n.r.e.); Attorney General Opinions JM-424 (1986); JM-379 (1985). Such a contract is "violative of the spirit and letter of our law, and is against policy." See <u>Meyers v. Walker</u>, <u>supra</u>, at 307. Contracts in violation of the <u>Meyers v. Walker</u> doctrine are void. <u>Id.</u>

Although the assignment between the lessee and the assignee did not involve a direct contract with the Board, the contractual arrangement falls squarely within the <u>Meyers</u> prohibition. An assignee stands in the same position as his assignor. See <u>Houchins v. Scheltz</u>, 590 S.W.2d 745 (Tex. Civ. App. - Houston [14th Dist.] 1979, no writ). The Board president was entitled to receive rent which is a pecuniary benefit. <u>See generally</u> <u>Delta Electric Construction Co. v. City of San Antonio</u>, 437 S.W.2d 602 (Tex. Civ. App. - San Antonio 1969, writ ref'd n.r.e.). Therefore the assignment between the lessee and the assignee was illegal and void and had no affect on the validity of the original lease.

You also ask whether the resignation of the Board president, eight months after the 1973 assignment, had the effect of curing the void transaction. The <u>Meyers v. Walker</u> court also stands for the proposition that an <u>ultra vires</u> and void contract with governmental entity is not subject to ratification. See <u>Meyers v. Walker</u>, 276 S.W. 306, at 307. Therefore, the subsequent resignation could not cure the illegal or void contract.

Finally, questions two (2) and four (4) are so intertwined with issues of fact that we cannot provide definitive answers. These questions involve equitable considerations which require the balancing of factual and legal principles beyond the scope of this office's authority.

## S U M M A R Y

A board of trustees of an independent school district has the authority to lease school property so long as the lease does not impinge upon the board's authority to perform its essential function; <u>i.e.</u>, to operate public schools. The question of whether the 50-year lease agreement, which is hindering Fredericksburg Independent School District from obtaining a higher rental value for its property, impinges upon its essential governmental function and is a question

of fact. The single fact that the lease is for a period of 50 years is not necessarily contrary to public policy.

Although the 1973 assignment between the Board president and the lessee did not involve a direct contractual relationship with the Board, the effects of the assignment created a relationship which resulted in a pecuniary benefit to the Board president, and therefore, was void as against public policy. The question of whether a party to a contract may benefit from the equitable doctrine of estoppel involves a determination of factual issues.

Very truly yours,

JIM   MATTOX
Attorney General of Texas

JACK HIGHTOWER
First Assistant Attorney General

MARY KELLER
Executive Assistant Attorney General

RICK GILPIN
Chairman, Opinion Committee

Prepared by Tony Guillory
Assistant Attorney General