

# The Attorney General of Texas

February 6, 1986

JIM MATTOX
Attorney General

Supreme Court Building
P. O. Box 12548
Austin, TX. 78711- 2548
512/475-2501
Telex 910/874-1367
Telecopier 512/475-0266

714 Jackson, Suite 700
Dallas, TX. 75202-4506
214/742-8944

4824 Alberta Ave., Suite 160
El Paso, TX. 79905-2793
915/533-3484

1001 Texas, Suite 700
Houston, TX. 77002-3111
713/223-5886

806 Broadway, Suite 312
Lubbock, TX. 79401-3479
806/747-5238

4309 N. Tenth, Suite B
McAllen, TX. 78501-1685
512/682-4547

200 Main Plaza, Suite 400
San Antonio, TX. 78205-2797
512/225-4191

An Equal Opportunity/
Affirmative Action Employer

Gary E. Miller, M.D.
Commissioner
Texas Department of Mental Health
    and Mental Retardation
P. O. Box 12668
Austin, Texas    78711

Opinion No. JM-424

Re: Scope of article 988b,
V.T.C.S., with respect to mem-
bers of the Board of Trustees
of a Mental Health/Mental Re-
tardation Community Center

Dear Dr. Miller:

You ask several questions about article 988b, V.T.C.S., which
relates to conflict of interest by local public officials. The
statute provides in part:

> Sec. 3. (a) Except as provided by Section 5
> of this Act, a local public official commits an
> offense if he knowingly:
>
> (1) participates in a vote or decision on a
> matter involving a business entity in which the
> local public official has a substantial interest
> if it is reasonably foreseeable that an action on
> the matter would confer an economic benefit to the
> business entity involved. . . .
>
> . . . .
>
> (b) An offense under this section is a Class A
> misdemeanor.

You first ask whether the term "business entity" as used in article
988b includes a nonprofit corporation. We conclude that the term does
include a nonprofit corporation.

Article 988b, section 1(2), defines "business entity" as

> a sole proprietorship, partnership, firm, <u>corpora-
> tion</u>, holding company, joint-stock company, re-
> ceivership, trust, <u>or any other entity recognized
> in law</u>. (Emphasis added).

p. 1939

A nonprofit corporation is a corporate entity which does not distribute its income to its members, directors, or officers. It does, however, pay compensation for services rendered. See Texas Non-Profit Corporation Act, V.T.C.S. art. 1396-1.01 et seq. The legislature enacted a broad definition of "business entity" which is not limited to corporations incorporated under the Texas Business Corporation Act and does not exclude those incorporated under the Texas Non-Profit Corporation Act. Compare V.T.C.S. art. 988b, §1(2) with V.T.C.S. art. 6252-9b, §2(11) (defining "business entity" to include "any other entity . . . through which business for profit is conducted").

You ask as your second question whether article 988b applies to a member of the board of trustees of a community mental health or mental retardation center who received a salary in excess of ten percent of his gross income for the previous year as an employee of a nonprofit corporation. We believe that a member of such a board is a "local public official" within the definition found in article 988b:

> 'Local public official' means a member of the governing body or another officer, whether elected or appointed, paid or unpaid, of any district (including a school district), county, city, precinct, central appraisal district, transit authority or district, or other local governmental entity who exercises responsibilities beyond those that are advisory in nature.

V.T.C.S. art. 988b, §1(1).

Community centers have characteristics of both an agency of the state and of a local governmental body. V.T.C.S. art. 5547-203; see, e.g., Attorney General Opinions JM-12 (1983); H-850 (1976); H-450 (1974); M-1266 (1972); M-316 (1968). They are supervised and assisted by the Department of Mental Health and Mental Retardation. See V.T.C.S. arts. 5547-203, §§3.05, 3.11; 5547-204, §§4.01, 4.03.

On the other hand, community centers are established and operated by counties, cities, hospital districts, school districts, or any combination of those. They are governed by boards of trustees composed of the governing body of a single city, county, hospital district, or school district or designated by the governing bodies which organized the center. See V.T.C.S. art. 5547-203, §3.02; Attorney General Opinion M-1266 (1972). Cf. Attorney General Opinions JM-38 (1983); H-850 (1976). In our opinion, a community center is a local governmental entity within article 988b, V.T.C.S., and its trustees are local public officials within that statute. See V.T.C.S. art. 5547-203, §§3.05, 3.06.

A trustee who receives a salary in excess of ten percent of his gross income from the previous year from a nonprofit corporation would have a substantial interest in that corporation. See V.T.C.S. art. 988b, §2(a)(2). Thus, transactions between the nonprofit corporation which employs the trustee and the community center he serves as trustee are subject to scrutiny under article 988b, V.T.C.S.

You next ask whether article 988b, V.T.C.S., overrules or merely supplements earlier Attorney General Opinions on conflict of interest, in particular Attorney General Opinions M-340 (1969) and H-1309 (1978).

Attorney General Opinion M-340 (1969) determined that the governing board of a community mental health, mental retardation center could not contract with a corporation in which a board member was interested as a director and stockholder. The opinion relied on the declaration of public policy made in Meyers v. Walker, 276 S.W. 305, 307 (Tex. Civ. App. - Eastland 1925, no writ):

> If a public official directly or indirectly has a pecuniary interest in a contract, no matter how honest he may be, and although he may not be influenced by the interest, such a contract so made is violative of the spirit and letter of our law, and is against public policy.

The court declared the contract made in violation of this policy to be illegal and void. Id. The common law doctrine expressed in Meyers v. Walker has repeatedly been relied upon to invalidate contracts made by public officials with a pecuniary interest therein. See, e.g., City of Edinburg v. Ellis, 59 S.W.2d 99 (Tex. Comm. App. 1933, holding approved); Delta Electric Construction Co. v. City of San Antonio, 437 S.W.2d 602 (Tex. Civ. App. - San Antonio 1969, writ ref'd n.r.e.); Bexar County v. Wentworth, 378 S.W.2d 126 (Tex. Civ. App. - San Antonio 1964, writ ref'd n.r.e.); Attorney General Opinions JM-171 (1984); MW-179 (1980); H-1309 (1978); H-916 (1976); M-340 (1969); WW-1362 (1962); O-2929 (1942). See also Wooldridge v. Folsom, 564 S.W.2d 471 (Tex. Civ. App. - Dallas 1978, no writ). A subsequent Attorney General Opinion determined that an employee's interest in his company was sufficient to create a conflicting interest with his duties as a public officer. Attorney General Opinion H-916 (1976).

Attorney General Opinion H-1309 (1978) concluded that a governmental body could not contract with a private, nonprofit corporation which a member of the governmental body served in a management position. Such transactions were barred by the common law policy against dual agency: an agent may not represent both sides in a contract unless the principal consents. The state's agent may therefore not represent the opposite side in a transaction in the absence of legislative consent. See generally V.T.C.S. art. 2529c.

In our opinion, article 988b changes the common law rules on conflict of interest. For example, section 2(c) imputes to the local public official the pecuniary interests of his relatives:

> An interest of a person related in the first or second degree by either affinity or consanguinity to the local public official is a 'substantial interest.'

V.T.C.S. art. 988b, §2(c). The common law doctrine did not extend to pecuniary interests of the officer's relatives. See Attorney General Opinion H-354 (1974) (county commissioners court may contract with corporation owned by a commissioner's brother).

Article 988b also differs from the common law in that it applies only to transactions in which a local public official has a "substantial business interest," defined as follows:

> Sec. 2. (a) A person has a substantial interest in a business if:
>
> (1) the interest is ownership of 10 percent or more of the voting stock or shares of the business entity or ownership of $2,500 or more of the fair market value of the business entity; or
>
> (2) funds received by the person from the business entity exceed 10 percent of the person's gross income for the previous year.
>
> (b) A person has a substantial interest in real property if the interest is an equitable or legal ownership with a fair market value of $2,500 or more.
>
> (c) An interest of a person related in the first or second degree by either affinity or consanguinity to the local public official is a 'substantial interest.'

This office has, however, held that a negligible ownership interest in a business constitutes a pecuniary interest. See Attorney General Opinion H-624 (1975) (commissioners court may not purchase supplies from a farmer's cooperative in which a commissioner owns a small share). But see V.T.C.S. art. 988a (legislative overruling of result in Attorney General Opinion H-624).

Article 988b differs from the common law with respect to remedies:

Dr. Gary E. Miller - Page 5 (JM-424)

Sec. 4. If a local public official . . . has a substantial interest in a business entity that would be peculiarly affected by any official action taken by the governing body, the local public official, before a vote or decision on the matter, shall file an affidavit stating the nature and extent of the interest and shall abstain from further participation in the matter. The affidavit must be filed with the official recordkeeper of the governmental entity.

. . . .

Sec. 6. The penalties and remedies provided by this article do not limit common law remedies of tort, contract, or equity, including a suit for damages, injunction, or mandamus. The finding by a court of a violation under this article does not render an action of the governing body voidable unless the measure that was the subject of an action involving conflict of interest would not have passed the governing body without the vote of the person who violated this article. (Emphasis added).

V.T.C.S. art. 988b, §§4, 6.

Under the common law, an officer cannot cure his conflict of interest by recusing himself. See Delta Electric Construction Co. v. City of San Antonio, supra. Moreover, the common law doctrine declares public contracts in which public officers are pecuniarily interested to be void, while article 988b provides that they are only voidable and only in limited circumstances. See Delta Electric Construction Co. v. City of San Antonio, supra; City of Edinburg v. Ellis, supra; Meyers v. Walker, supra; Attorney General Opinions JM-171 (1984); MW-179 (1980); MW-34 (1979); H-916 (1976). In our opinion, article 988b was intended to repeal and replace the common law doctrine. Legislative history documents this intent.

Article 988b was enacted by Senate Bill No. 1044 of the Sixty-eighth Legislature. Acts 1983, 68th Leg., ch. 640 at 4079. Its enactment was recommended by the Public Servant Standards of Conduct Advisory Committee, a body established by a statute directing it to study laws on the conduct of public servants and to report to the legislature its recommendations for revising them. Acts 1981, 67th Leg., ch. 151, §9 at 371. The statute expressly stated that "[t]he legislature shall consider the committee's recommendations." Id. §9(b).

The Advisory Committee studied conflicts of interest which centered around voting, purchasing and contracts, and eventually recommended solutions based on a form of financial disclosure with abstention from participation. Background Report on Local Officers' Conflict of Interest Problems, published in Final Report of the Public Servant Standards of Conduct Advisory Committee, at 17 (August 1983). Its recommendations for legislation were primarily based on the work of its Conflict of Interest Subcommittee. The subcommittee sought to establish a degree of personal financial interest in a transaction above which a conflict occurred. Relying in part on Attorney General Opinion M-1236 (1972), which held that a 10 percent stock ownership constituted a substantial interest, the subcommittee determined that a threshold financial interest of 10 percent or $2,500 would cover most potentially conflicting interests. See generally V.T.C.S. art. 6252-9b, §2(12) (defining a state officer's "substantial interest" in a business entity). The subcommittee also developed procedures for preventing the interested public official from participating in the governmental body's action. The Advisory Committee recommended the proposed legislation which eventually became article 988b, V.T.C.S.

The bill analysis to Senate Bill No. 1044 stated as follows:

> The only current statutes covering conflicts of interest for local officials do not cover all such officers and do not provide guidelines for determining when a conflict exists or procedures for handling such situations.

Bill Analysis to S.B. No. 1044, prepared for House Committee on Judicial Affairs, filed in Bill File to S.B. No. 1044, 68th Leg., Legislative Reference Library. Testimony at a public hearing on the bill reflects the understanding that it would supplant the common law for officers it covered. One witness stated that current law prohibited a governmental body from contracting with a business controlled by a member of the governmental body, but article 988b would allow such a contract to be made. Public Hearing on S.B. No. 1044 before the Senate Committee on Intergovernmental Relations, 68th Leg. (April 7, 1983) (testimony of Dick Brown, Executive Director of Texas Municipal League). The witness also stated that the purpose of the bill was to inform the public that a member of the governmental body has a business interest in the proposed contract. Id. He explained that if the interested officer signs an affidavit and abstains from voting, the governmental body can conduct business with that company. Id. Unlike the common law, which deals with conflict of interest by prohibiting contracts altogether, article 988b was enacted to allow the governmental body to make the contract if the interested official discloses his interests and recuses himself. See also V.T.C.S. art. 6252-9b, §6 (concerning certain officials of state boards and commissions with private interests in official matters).

Our conclusion that the legislature intended article 988b to change the common law is not inconsistent with the judicial approach to conflict of interest questions. The judicial decisions rest in part on statutes which codified the common law doctrine. For example, former article 988, V.T.C.S., prohibited city officers from being interested in transactions financed from public funds. Acts 1981, 67th Leg., ch. 527, §2, at 2230. An earlier criminal law penalized city or county officers who were pecuniarily interested in contracts made by their political subdivisions. Acts 1874, 14th Leg., ch. XXXIX, at 47 (former Penal Code art. 373 (1925) (repealed 1973)). The courts viewed these statutes as expressing the public policy of the state, and implemented it by holding that contracts made in violation of it were void. City of Edinburg v. Ellis, supra; Delta Electric Construction Co. v. City of San Antonio, supra; Bexar County v. Wentworth, supra; Meyers v. Walker, supra. See also Lower Colorado River Authority v. City of San Marcos, 523 S.W.2d 641 (Tex. 1975) (violation of open meetings law subjects action taken to judicial invalidation); Cruthfield v. Rambo, 86 S.W. 950 (Tex. Civ. App. 1905, writ ref'd) (contract to divide lottery winnings is contrary to law and public policy and unenforceable); Annot., 55 A.L.R.2d 481 (1957) (discusses validity of contracts made in violation of criminal statute which does not specifically declare the contract invalid).

With one exception, the judicial decisions have not considered legislation which diverged from the common law. In Wooldridge v. Folsom, 564 S.W.2d 471 (Tex. Civ. App. - Dallas 1978, no writ), residents of Dallas sued the mayor to nullify certain contracts on the ground of conflict of interest. The court held that the now-repealed article 988 did not apply to home rule cities such as Dallas, and that the contracts were not void. Under the city charter, contracts in which officers or employees were financially interested were "voidable by the city manager or the city council." 564 S.W.2d at 472. The court determined that a home rule city could adopt its own method of dealing with conflicts of interest.

The legislature intended to change the common law when it enacted article 988b. Transactions in which a public official has less than a substantial interest are no longer for that reason contrary to the public policy of Texas. Where the transaction involves the "substantial interest" of a "local public official" within article 988b, the governmental body may legally enter into it if the statutory procedures are followed. The contract or transaction will not in that case be void on account of that official's conflict of interest. Finally, the contract is voidable under the conditions set out in article 988b. The statutory procedures for disclosure and recusal replace the absolute common law prohibitions against transactions in which a member of the governmental body is pecuniarily interested. In answer to your third question, article 988b has changed the common law upon which numerous judicial decisions and attorney general opinions were based.

Your third question also inquires whether the principles of conflict of interest and dual agency would prevent public officials from contracting on behalf of the political subdivision with a private entity which provides them a salary or other benefit of less than 10 percent of their gross income for the previous year. As we have noted, the 10 percent interest is the threshhold amount for identifying a conflict of interest under section 2(a)(2). The legislature has determined that lesser amounts simply do not create conflicts of interest. Cf. V.T.C.S. art. 988b, §2(a)(1) (ownership interest cannot exceed $2,500); Attorney General Opinion JM-291 (1984).

The policy against dual agency, discussed in Attorney General Opinion H-1309 (1978) serves a similar function as the conflict of interest doctrine. We do not believe the legislature intended the policy of dual agency to prohibit the contracts authorized under article 988b. Thus, this policy does not prohibit a local board from contracting with a nonprofit corporation that employs one of its members in a management position, whether or not his salary constitutes a "substantial interest" under the statute. We caution, however, that his conduct must be consistent with the requirements of other civil and criminal statutes. See, e.g., Penal Code art. 39.01 (official misconduct).

Our answer to your third question makes it unnecessary to answer your fourth question.

You finally ask whether the Texas Department of Mental Health and Mental Retardation has authority under article 5547-204, V.T.C.S., to enact a rule which renders a community center ineligible for a grant-in-aid if one or more members of its board of trustees also serve on the board of a nonprofit organization with which the center conducts financial transactions.

The Sixty-ninth Legislature enacted Senate Bill No. 633 which replaced the grant-in-aid mode of financing for community centers with a method based on contracts for community based services between the department and community providers. Acts 1985, 69th Leg., ch. 496 at 4155. Section 4.03, which formerly concerned eligibility for grants, has been amended, and now concerns eligibility of community centers and other providers for community based services contracts. The changes in your statute have mooted your last question. If you wish to reframe and resubmit your question in the context of the amended provisions, we will address it at that time.

## S U M M A R Y

A trustee of a Mental Health/Mental Retardation
Community Center is a local public officer within
article 988b, V.T.C.S. Article 988b, V.T.C.S.,

modifies the common law concerning the pecuniary interest of a local public official in contracts entered into by the governmental body they serve. A governmental body may now contract with a private entity in which a member of the governmental body is pecuniarily interested if he follows the disclosure and recusal procedure stated in article 988b, V.T.C.S. The contract is voidable under the conditions set out in article 988b, V.T.C.S.

Very truly yours,

JIM MATTOX
Attorney General of Texas

JACK HIGHTOWER
First Assistant Attorney General

MARY KELLER
Executive Assistant Attorney General

ROBERT GRAY
Special Assistant Attorney General

RICK GILPIN
Chairman, Opinion Committee

Prepared by Susan L. Garrison
Assistant Attorney General