

# THE ATTORNEY GENERAL
## OF TEXAS

April 8, 1987

JIM MATTOX
ATTORNEY GENERAL

Mr. Perry L. Adkisson  
Chancellor  
Texas A & M University System  
College Station, Texas 77843

Opinion No. JM-671

Re: Validity of a proposed contract between Texas A & M and a corporation which is a wholly owned subsidiary of a corporation owned in part by a member of the university's board of regents

Dear Mr. Adkisson:

You inquire about the legality of a proposed transaction between the Texas Agricultural Experiment Station (TAES) and an agribusiness corporation in which a regent of Texas A & M University is economically interested.

The Texas Agricultural Experiment Station is an agency of the Texas A & M University System. Educ. Code §88.001(2). It is under the supervision of the board of regents of the Texas A & M University System. Educ. Code §88.202. An Education Code provision specifically provides that the regents

> shall generate revenues through agreements establishing equitable interests, royalties, and patent rights relating to releases of agricultural research products by the Texas agricultural experiment station when economically feasible.

Educ. Code §88.213.

The transaction about which you inquire involves an agreement between TAES and Granada Development Corporation (GDC), the entity in which the regent has an ownership interest. The Board of Regents would have to approve any contract between the Agricultural Experiment Station and GDC. See Educ. Code §§88.202, 88.203, 88.213. You describe the legal relationships between GDC, its parent corporation, of which the regent is one-half owner, and other subsidiaries of that parent. We will summarize these complex corporate relationships to provide a factual setting for your conflict of interest question.

The regent owns one-half the stock of Granada Corporation, which engages in agribusiness. Granada Development Corporation, a wholly owned subsidiary· of Granada Corporation, carries out research and

development projects for its own account and for the account of its clients. Among its clients are affiliates of GDC. You describe GDC's affiliates as "principally publicly owned limited partnerships for whom Granada Management Corporation serves as General Partner; owning no more than a one percent interest." Granada Management is wholly owned by Granada Land & Cattle Company, which, in turn, is wholly owned by Granada Corporation.

Thus, the university wishes to contract with GDC, a wholly owned subsidiary of Granada Corporation, in which a university regent owns half the stock. In addition, GDC does work for limited partnerships whose managing partner is wholly owned by another wholly owned subsidiary of Granada Corporation. You state that the limited partnerships cannot devote more than twenty percent of their capital to research and development, and it is presently anticipated that no more than fifteen percent of any partnership research and development activities would be carried on pursuant to the proposed agreement with Texas A & M University.

You state that the proposed agreement would take the form of a master agreement pursuant to which GDC's clients would totally fund specific research and development projects, to be identified in the future and to be carried on jointly by personnel of GDC and the Agricultural Experiment Station. The clients of GDC for whom specific projects were carried on would receive a worldwide royalty-bearing exclusive license to market and sell the product of the research projects. The Texas Agricultural Experiment Station would receive royalties in amounts to be agreed upon between TAES and the partnership. Granada Management, as a one percent interest owner in the affiliate partnerships, would contribute a pro rata share of one percent of any cash contribution required and would be entitled to receive a pro rata one percent share of any research benefit. The regent who owns a half interest in Granada Corporation is connected to all parties to the contract — the University, GDC, and the affiliate clients of GDC.

The Texas courts have established a strict rule prohibiting a public officer from having a personal financial interest in a contract entered into by the governmental body of which he is a member. The court in Meyers v. Walker, 276 S.W. 305 (Tex. Civ. App. - Eastland 1925, no writ) stated this rule as follows:

> If a public official directly or indirectly has a pecuniary interest in a contract, no matter how honest he may be, and although he may not be influenced by the interest, such a contract so made is violative of the spirit and letter of our law, and is against public policy.

Meyers v. Walker, 276 S.W. at 307. The rule announced in Meyers v. Walker has been relied upon in numerous cases to invalidate contracts

made by public officials who were pecuniarily interested therein. See, e.g., City of Edinburg v. Ellis, 59 S.W.2d 99 (Tex. Comm'n App. 1933); Delta Electric Construction Co. v. City of San Antonio, 437 S.W.2d 602 (Tex. Civ. App. - San Antonio 1969, writ ref'd n.r.e.); Bexar County v. Wentworth, 378 S.W.2d 126 (Tex. Civ. App. - San Antonio 1964, writ ref'd n.r.e.); Attorney General Opinion Nos. JM-171 (1984); MW-179 (1980); H-1309 (1978); H-916 (1976); M-340 (1969); WW-1362 (1962); V-640 (1948); O-2929 (1942). The conflict of interest cannot be cured by the interested officer's recusing himself. Delta Electric Construction Co. v. City of San Antonio, 437 S.W.2d at 609.

In our opinion, the common law rule announced in Meyers v. Walker provides the answer to your question. Under the proposed contract, the affiliate clients of Granada Development Corporation will have a right to receive royalties on projects that may be developed from the research they fund. The legislature recognized the potential economic value of research conducted at TAES when it enacted section 88.213 of the Education Code directing the regents to generate revenues "through agreements establishing equitable interests, royalties, and patent rights relating to releases of agricultural research products" by TAES. See also General Appropriations Act, Acts 1985, 69th Leg., ch. 980, art. V, §70, at budget 510 (protection of state's property rights in patentable product of research funded under Appropriations Act).

The regent who owns half the stock in Granada Corporation has a pecuniary interest in Granada's subsidiaries and in their transactions. The economic well-being of Granada will be affected by the business activities of its subsidiaries, including work done under the proposed contract with Texas A & M University. Therefore, we believe the regent has a pecuniary interest in the contract between GDC and the university, arising out of his ownership interest in the subsidiary, even though GDC's clients, and not the subsidiary itself, will pay the costs and receive the benefit of projects undertaken by GDC and the university agricultural experiment station. The fact that GDC would not receive any consideration from the university would not prevent the regent from having at least an indirect interest in that transaction. See generally Bexar County v. Wentworth, supra. We believe the regent has a pecuniary interest through GDC's affiliate clients in the agreement with the university.

Moreover, where the client for whom the Agricultural Experiment Station undertakes a project is an affiliate of GDC, the regent actually has a pecuniary interest in the transaction. Although you argue that the regent's interest is "de minimis," the common law conflict of interest has been applied to small interests. See Attorney General Opinion H-624 (1975); see also Attorney General Opinion JM-424 (1986).

The general partner of a limited partnership has, with certain exceptions, all the rights and powers of a partner in a partnership without limited partners. V.T.C.S. art. 6132a, §10(a). Thus, the

general partner is "an agent of the partnership for the purpose of its business." V.T.C.S. art. 6132b, §9(1). He may contract for the partnership. <u>Boyd v. Leasing Associates, Inc.</u>, 516 S.W.2d 485, 489 (Tex. Civ. App. - Houston [1st Dist.] 1974, writ ref'd n.r.e.). The general partner of a limited partnership moreover stands in a fiduciary capacity to the limited partners. <u>Crenshaw v. Swenson</u>, 611 S.W.2d 886, 890 (Tex. Civ. App. - Austin 1980, writ ref'd n.r.e.); <u>Watson v. Limited Partners of WCKT, Ltd.</u>, 570 S.W.2d 179, 182 (Tex. Civ. App. - Austin 1978, writ ref'd n.r.e.). It is the general partner's duty to administer the partnership affairs solely for the benefit of the partnership. <u>Crenshaw v. Swenson</u>, 611 S.W.2d at 890. Granada Management Corporation is the general partner of Granada Development's affiliate clients. The individuals who own the parent corporation of Granada Management's parent may benefit economically from contracts which Granada Management Company may enter into on behalf of its clients.

You argue that the enactment of article 6252-9b, V.T.C.S., changed the common law rule of <u>Meyers v. Walker</u> and thus that doctrine does not govern this transaction. Section 6 of article 6252-9b, V.T.C.S., provides in part:

> (a) This section applies only to an elected or appointed officer who is a member of a board or commission having policy direction over a state agency, excluding officers subject to impeachment under Article XIV, [sic] Section 2, of the Texas Constitution. If such an officer has a personal or private interest in any measure, proposal, or decision pending before the board or commission, he shall publicly disclose the fact to the board or commission in a meeting called and held in compliance with the Open Meetings Law (Article 6252-17, Vernon's Texas Civil Statutes) and shall not vote or otherwise participate in the decision. The disclosure shall be entered in the minutes of the meeting.

> (b) For the purposes of this section, the term 'personal or private interest' has the same meaning as is given to it under Article III, Section 22, of the Texas Constitution, governing the conduct of members of the legislature. For the purposes of this section, a person does not have a 'personal or private interest' in any measure, proposal, or decision if he is engaged in a profession, trade, or occupation and his interest is the same as all others similarly engaged in the profession, trade, or occupation.

> (c) A person who violates this section is subject to removal from office on the petition of the attorney general on his own initiative or on the relation of any other member of the board or commission or on the relation of any citizen. . . .

You suggest that a state board may contract with a company in which a board member is interested as long as the interested person publicly discloses the fact and recuses himself.

We have held that article 988b, V.T.C.S., a 1983 enactment pertaining to conflict of interest by local public officials, repealed the Meyers v. Walker doctrine at the local level. See Attorney General Opinion JM-424 (1985). Article 988b, V.T.C.S., provides in part:

> Sec. 3. (a) Except as provided by Section 5 of this Act, a local public official commits an offense if he knowingly:
>
> (1) participates in a vote or decision on a matter involving a business entity in which the local public official has a substantial interest if it is reasonably foreseeable that an action on the matter would confer an economic benefit to the business entity involved;
>
> . . . .
>
> Sec. 4. If a local public official or a person related to that official in the first or second degree by either affinity or consanguinity has a substantial interest in a business entity that would be peculiarly affected by any official action taken by the governing body, the local public official, before a vote or decision on the matter, shall file an affidavit stating the nature and extent of the interest and shall abstain from further participation in the matter. The affidavit must be filed with the official recordkeeper of the governmental entity.
>
> Sec. 5. (a) The governing body of a governmental entity may contract for the purchase of services or personal property with a business entity in which a member of the governing body has a substantial interest if the business entity is the only business entity that provides the needed service or product within the jurisdiction of the governmental entity and is the only business entity that bids on the contract.

. . . .

>Sec. 6. . . . The finding by a court of a violation under this article does not render an action of the governing body voidable unless the measure that was the subject of an action involving conflict of interest would not have passed the governing body without the vote of the person who violated this article. (Emphasis added).

The language and legislative history of article 988b demonstrate that it applies to contract formation and that it changes the common law rule invalidating a public contract in which even one member of the contracting governmental body has a private pecuniary interest.

Section 6 of article 6252-9b, V.T.C.S., prohibits voting or other participation in a decision by an officer who has

>a personal or private interest in any measure, proposal, or decision pending before the board. . . .

V.T.C.S. art. 6252-9b, §6(a). Article 988b prohibits participation

>in a vote or decision on a matter involving a business entity in which the local public official has a substantial interest. . . .

V.T.C.S. art. 988b, §3(a)(1).

These two prohibitions are expressed in similar language. Article 6252-9b does not, however, include any language indicating that section 6 was intended to apply to contracts, nor does its legislative history suggest an intent to modify the Meyers v. Walker rule. Article 6252-9b was adopted in 1973 as House Bill No. 1. Acts 1973, 63rd Leg., ch. 421, at 1086. It was described as "The Ethics Bill" and implemented its purposes through financial disclosure by state officers. Id.; "Background Report on Local Officers' Conflict of Interest Problems" at 17 in Final Report of the Public Servant Standards of Conduct Advisory Committee, August 1983. Section 6 was added only when House Bill No. 1 was discussed by the conference committee. Texas Legislative Council, "Ethics and Financial Disclosure," at 31 in Selected Public Interest Legislation, May 1978. Some conferees expressed the opinion that the restriction on voting by members of the legislature in article III, section 22 of the Texas Constitution should also apply to members of boards and commissions. Id. Article III, section 22 of the Texas Constitution provides as follows:

>A member who has a personal or private interest in any measure or bill, proposed, or pending

> before the Legislature, shall disclose the fact to
> the House, of which he is a member, and shall not
> vote thereon.

"It is an ancient rule that members of a lawmaking body shall not vote on matters in which they have a personal interest." Luce, Legislative Procedure, 366 (1922) (quoted in Texas Legislative Council, "Ethics and Financial Disclosure" at 32).

Article 6252-9b, V.T.C.S., was therefore modeled on a provision applicable to legislators, who do not enter into contracts for the state.[1] The state agencies whose offices are subject to section 6 exercise regulatory and other executive functions. They may also enter into contracts necessary to carry out their executive responsibilities, but it is reasonable to conclude that section 6 pertains to the agencies' primary functions: rule making and the application of the statute and rules to individual cases. Section 6 does not prohibit an officer from participating in a measure, proposal or decision "if he is engaged in a profession, trade, or occupation and his interest is the same as all others similarly engaged in the profession, trade, or occupation." V.T.C.S. art. 6252-9b, §6(b). This proviso suggests that the legislature had regulatory actions in mind when it added section 6 to article 6252-9b. Section 6 was moreover seen by the legislature as placing an additional restriction on state offices and not as removing an existing restriction.

When article 6252-9b, V.T.C.S., became effective on January 1, 1974, the following rule of statutory construction applied to all civil statutes:

> The rule of common law that statutes in deroga-
> tion thereof shall be strictly construed shall
> have no application to the Revised Statutes; but
> the said statutes shall constitute the law of this
> State respecting the subjects to which they
> relate; and the provisions thereof shall be
> liberally construed with a view to effect their
> objects and to promote justice.

Act of Feb. 21, 1879, 16th Leg. R.S., adopting Tex. Civ. Stat., Final Title §3 (formerly codified as V.T.C.S. art. 10(8) repealed 1985). See Government Code §312.006(b). The object of article 6252-9b, V.T.C.S., is stated as follows:

---

1. Article III, section 18, of the Texas Constitution forbids a legislator from being interested in contracts with the state or a county authorized by any law during a term for which he was elected.

It is the policy of the State of Texas that no state officer or state employee shall have any interest, financial or otherwise, direct or indirect, or engage in any business transaction or professional activity or incur any obligation of any nature which is in substantial conflict with the proper discharge of his duties in the public interest. To implement this policy and to strengthen the faith and confidence of the people of Texas in their state government, there are provided standards of conduct and disclosure requirements to be observed by persons owing a responsibility to the people of Texas and the government of the State of Texas in the performance of their official duties.

V.T.C.S. art. 6252-9b, §1. This objective would be poorly served by a construction of section 6 which weakens the common law conflict of interest rule applicable to state officers.

Attorney General Opinions issued since article 6252-9b, V.T.C.S., became effective have applied the Meyers v. Walker rule to state agencies. See Attorney General Opinion Nos. MW-179 (1980); H-1309 (1978). Section 6 of article 6252-9b, V.T.C.S., has been applied to an agency in its capacity as a regulatory body. See Attorney General Opinion Nos. JM-126 (1984); H-1319 (1978). In our opinion, article 6252-9b, V.T.C.S., did not modify the common law conflict of interest rule stated in Meyers v. Walker.

Accordingly, the Board of Regents of A & M University may not approve a contract between the Texas Agricultural Experiment Station and a corporation in which a regent of Texas A & M University has a financial interest. Under the common law rule, the board is barred from approving the contract; recusal of the interested regent will not permit the board to approve it. See Delta Electric Construction Co. v. City of San Antonio, supra. The public policy of the state strictly opposes such contracts even if all parties act in good faith and fully believe that the contract will benefit the state. A prior opinion of this office determined that the board of regents of a state college could not contract with a bank of which a regent was an officer. The opinion made the following observation about the absolute nature of the public policy against conflict of interest in contract matters:

It is not a question of whether or not the public interest will actually suffer in permitting the particular contract, but it is rather one of a sound policy as to official conduct where the law will not speculate upon the actualities following its violation.

Attorney General Opinion V-640 (1948) at 2.

The Regents of A & M University may not approve the contract about which you inquire.

### S U M M A R Y

The Texas Agricultural Experiment Station, an agency of the Texas A & M University System, may not contract with a private agricultural development corporation in which a regent of the university has a pecuniary interest.

Very truly yours,

JIM MATTOX
Attorney General of Texas

JACK HIGHTOWER
First Assistant Attorney General

MARY KELLER
Executive Assistant Attorney General

JUDGE ZOLLIE STEAKLEY
Special Assistant Attorney General

RICK GILPIN
Chairman, Opinion Committee

Prepared by Susan L. Garrison
Assistant Attorney General