BEXAR COUNTY, Texas, et al., Appellants,

v.

Earl J. WENTWORTH, Appellee.

No. 14304.

Court of Civil Appeals of Texas.

San Antonio.

April 8, 1964.

Rehearing Denied April 24, 1964.

James E. Barlow, Dist. Atty., Carl Wright Johnson, Jess W. Young, Teairl W. Lewis, S. Benton Davies, Jr., San Antonio, for appellants.

Carl Raymond Crites, Thomas H. Peterson, San Antonio, for appellee.

PER CURIAM.

This is an appeal from an order granting appellee, Earl J. Wentworth, a temporary injunction restraining appellant, Bexar County, from carrying out a contract to purchase from appellant, The Shoup Voting Machine Corporation, one hundred new voting machines for the sum of $182,300. Wentworth, as a taxpaying citizen of Bexar County, alleged that the contract was illegal and void because Anthony J. Ploch, who cast the deciding vote to let the contract (the count stood 3–2), holds an exclusive sales contract with the Shoup Corporation whereby Ploch receives a commission of 10% on the sale of every voting machine sold by Shoup in the State of Texas, except in Bexar County.

Ploch has served as Commissioner of Precinct 4 of Bexar County since 1946. He testified that in about 1948 he and two other members of the Bexar County Commissioners' Court went to Louisiana and inspected the Shoup voting machine. Ploch was very much impressed with the capabili-

ties of this machine and saw that it represented a "gold mine." Shortly thereafter he secured an agency contract with Shoup, and at the time of the present attempted purchase Ploch was operating under the following contract:

"THE SHOUP VOTING MACHINE CORPORATION
MANUFACTURERS AND DISTRIBUTORS
SHOUP VOTING MACHINE

260 Madison Avenue
New York 16, New York

August 19, 1954

Mr. Anthony J. Ploch
2319 South Hackberry Street
San Antonio, Texas

Dear Mr. Ploch:

You are hereby appointed our sole and exclusive representative for the promotion, exploitation and sale of our voting machines within the State of Texas, except in Bexar County, and your approval of this agreement is indicated by your acceptance at the end hereof. You are to give your best efforts to the carrying out of this appointment and will render such services in connection therewith as may be reasonable and necessary. You understand and agree that you are neither authorized to employ or retain any persons on our behalf nor to contract for or obligate this company in any manner and that all proposals or orders are subject to written acceptance by us and the right is reserved to reject any order obtained by you.

We agree to pay you as your sole compensation, and in lieu of any expenses you may incur, sums or commissions equal to 10% of the net sales price f. o. b. the factory, Canton, Ohio, of the machines sold by you or us in the territory above mentioned. The said payments are to be made to you within ten days after we have received payment for machines delivered by us. We agree to pay the premium on any performance bonds or other bonds and to make any deposit in cash or by certified check which may be required in connection with the obtaining of orders.

This agreement shall continue in full force and effect for a period of one year from the date hereof and shall then automatically be renewed for one-year periods thereafter unless either party gives written notice at least one month prior to the expiration of the one-year period of their intention not to renew the agreement.

This represents the entire agreement between us and there are no other understandings.

Very truly yours,

THE SHOUP VOTING MACHINE
CORPORATION

By: /s/ Harold J. Lewison
        Harold J. Lewison
     Executive Vice President

ACCEPTED:

/s/ A. J. Ploch
    A. J. Ploch"

It is seen that Ploch agreed to use his best efforts to promote, exploit and sell Shoup voting machines throughout the State of Texas, except in Bexar County. No reason appears in the record as to why Bexar County was excluded in this state-wide contract, unless in the hope that Shoup would be able to sell Bexar County these machines. The record shows that Ploch's efforts for Shoup were largely confined to the promotion and exploitation of the machines in that all demonstrations were handled by other Shoup representatives.

Ploch testified that he assigned this contract to "The Anthony Company," a partnership composed of himself and his three sons-in-law. The office and principal place of business of this partnership, as well as the residence of all the partners, is in Bexar County. Tax returns show that this partnership has received commissions from the sale of Shoup machines averaging in excess of $25,000 over the past ten years, and Ploch expressed a hope for the same for the next ten years. Under the undisputed record, neither Ploch nor the Anthony Company will receive any money from the sale of voting machines to Bexar County.

■ Under the provisions of Article 2340, Vernon's Ann.Civ.Stats., Ploch, in addition to his constitutional oath of office, was required to, and has taken the following oath each time he has been re-elected, to-wit: "I, A. J. Ploch, do solemnly swear that I will not be directly or indirectly interested in any contract of claim against the County in which I reside, except such warrants as may issue to me as fees of office, so help me God." It is quite clear under this oath, that if Ploch is directly or indirectly interested in the contract to purchase the 100 Shoup voting machines, within the meaning of the above oath, such contract is against public policy and null and void. Art. 373, Vernon's Ann.Penal Code; City of Edinburg v. Ellis, Tex.Com.App., 59 S.W.2d 99; Starr County v. Guerra, Tex.Civ.App., 297 S.W.2d 379; Knippa v. Stewart Iron Works, Tex.Civ.App., 66 S. W. 322.

■ This being an appeal from an order of the trial court granting a temporary injunction, we should affirm the order unless we find that the court abused its discretion in making the order. Appellee was not required, at this hearing, to show that the contract to purchase the 100 Shoup voting machines is null and void, or to show that Ploch was disqualified to cast the deciding vote, but only that there was a probability that such is the case. In Camp v. Shannon, 162 Tex. 515, 348 S.W.2d 517, Chief Justice Calvert stated the rule thusly:

"The purpose of a temporary injunction is to preserve the status quo of the subject matter of a suit pending a final trial of the case on its merits. James v. E. Weinstein & Sons, Tex.Com. App., 12 S.W.2d 959, 960. A trial judge therefore has broad discretion to grant or to deny a writ when the pleadings and the evidence show a probable right of recovery in the applicant and a probable injury to him if the writ is not granted. Transport Co. of Texas v. Robertson Transports, 152 Tex. 551, 261 S.W.2d 549. A necessary corollary of that rule is that a trial judge abuses his discretion if he grants a writ when the evidence fails to furnish any reasonable basis for concluding that the applicant has a probable right of recovery. To furnish a reasonable basis for the conclusion the evidence need not establish that the applicant will finally prevail in the litigation, Transport Co. of Texas v. Robertson Transports, supra, but it must, at the very least, tend to support a right of recovery. Southwestern Greyhound Lines, Inc. v. Railroad Commission, 128 Tex. 560, 99 S.W.2d 263, 109 A.L.R. 1235."

The question here is whether there is evidence showing that Ploch has a probable interest, either directly or indirectly, in the contract of Bexar County to purchase 100

Shoup machines. In our opinion, the record here shows such probable interest.

Ploch is the sole and exclusive representative for the *promotion, exploitation* and *sale* of the Shoup voting machines within the State of Texas, *except in Bexar County*. He is obligated to give his best efforts to the carrying out of his appointment, and to render such services in connection therewith as may be reasonable and necessary. The contract makes it clear that he is not to receive any commission from machines sold in Bexar County, but it is difficult for us to say that he would be carrying out this contract as to the rest of the State if he stood silently by and did or said nothing to sell such machines in Bexar County. Could he say that he was using his best efforts to promote and exploit the sale of these machines throughout the State if he stood by and saw 100 voting machines of another brand sold in the county of his residence, where he is the "voting machine commissioner," without lifting a finger to aid his company? As a matter of fact, the evidence shows that no one could have done or said more on behalf of the Shoup voting machines in securing this contract than did Ploch.

Under all of the circumstances, it is presumed that Ploch was not in a position to give to Bexar County his undivided loyalty and support in seeing to it that Bexar County got the very best deal possible in the purchase of 100 new voting machines, when he was at the same time obligated to use his best efforts to promote and exploit the sale of Shoup voting machines throughout the State, except in Bexar County. The fact that he was not to receive any money from such a sale in Bexar County would not prevent him from having an indirect interest in promoting and exploiting Shoup voting machines elsewhere in the State by a sale in Bexar County.

The trial court, after hearing the witnesses and observing their demeanor on the witness stand, decided that a temporary injunction should be granted prohibiting the completion of the contract for the purchase of one hundred Shoup voting machines until the matter could be heard on the merits, and we are unable to say, in the face of this record, that the trial court abused its discretion in ordering the issuance of this temporary injunction.

The judgment of the trial court is affirmed.