

# THE ATTORNEY GENERAL
## OF TEXAS

### AUSTIN, TEXAS 78711

CRAWFORD C. MARTIN
ATTORNEY GENERAL

November 4, 1971

Dr. J. W. Edgar
Commissioner of Education
Texas Education Agency
201 East 11th Street
Austin, Texas 78701

Opinion No. M-987

Re: Authority of a school
district to grant to
a school board member
permission to provide
ambulance service at
school football games,
and related question.

Dear Dr. Edgar:

Your recent letter requesting the opinion of this office concerning the referenced matter states, in part, as follows:

"Until 1963, X funeral home, then the only one in West Independent School District, was permitted to have available an ambulance to serve as needed at home football games in West. Since 1963, when Y funeral home opened in West, either X or Y has been permitted on an alternate games basis to have its ambulance present at local West high school football games. West school district never has directly paid for ambulance services rendered its athletes. . . .

"In April, 1971, the owner-operator of X funeral home was elected a trustee on the West school board; he desires to continue in the performance of ambulance services under the alternate game practice basis. Indeed, he offers while a trustee to so provide such service without a charge to anyone: the school, the insurance company, the parent, or the injured student. The owner-operator of Y home protests the acceptance or granting of the proposed offer as being illegal.

-4812-

"The Board of Trustees of the West Independent School District has urged that a request for an Attorney General's opinion be submitted on the following questions:

"1. Legally, may an independent school district board grant to a member of its school board, operator of a funeral home, . . . permission to have present and provide ambulance services as may be needed at its local school football games -- at no cost to the school, the insurance company, the parent of and/or the student injured in the activity, where competitive services are available and protest in the community?

" . . . .

"For years prior to 1970, the local Ford dealership in West has made available (loaned) to West schools without charge, automobile(s) for its driver education program class purposes and use of school staff members. In 1970, the manager of such dealership (who is stockholder therein) was elected a trustee of West school board. This Ford dealership continues the loan of automobiles for such purpose without charge. The district is accepting free loan automobile(s) for driver education program purposes also from the local Chevrolet dealership.

"2. May an independent school district legally accept upon loan without cost for driver education programs and school district purposes automobile(s) from a dealership, managed and owned in part by a member of its school board --- where it accepts like offers from other dealerships?"

A leading Texas case which passes upon the interest of public officials in contracts with or affecting the public body they represent is <u>Meyers v. Walker</u>, 276 S.W. 305 (Tex.Civ.App. 1925, no writ), in which the court said:

"... If a public official <u>directly or indirectly has a pecuniary interest in a contract</u>, no matter how honest he may be, and although he may not be influenced by the intent, such a contract so made is violative of the spirit and letter of our law, and is against public policy. (At p. 307). (Emphasis added).

See also: <u>City of Edinburg v. Ellis</u>, 59 S.W.2d 99 (Tex.Comm. App., 1933); <u>Cornutt v. Clay County</u>, 75 S.W.2d 299 (Tex.Civ. App. 1934, no writ); and <u>Bexar County v. Wentworth</u>, 378 S.W.2d 126 (Tex.Civ.App. 1964, error ref., n.r.e.); and generally, 47 Tex.Jur.2d 159-161, Public Officers, Sec. 121.

Prior Opinions of this office concerning situations wherein a school board member had been alleged to have an impermissible conflict of interest that violates public policy have uniformly held that such situations violated public policy only where a pecuniary advantage accrued to the board member. Attorney General's Opinions Nos. M-340 (1969), WW-1362 (1962), V-663 (1948), O-6876 (1946), O-6280 (1944), O-4000 (1941), O-2758 (1940), O-2306 (1940), O-1589 (1939), O-1014 (1939), and O-878 (1939).

We note that the two funeral homes furnish their ambulances on an alternate game basis, and that the school accepts loans of motor vehicles for driver education from both the Ford and the Chevrolet dealers. The school trustees and their competitors are treated exactly alike. Both the ambulance and the driver education vehicles are material aids to the public schools in basic spheres of their public school operation. We fail to discern such a substantial conflict of interest, special privilege or the exercise of undue influence relating to either of the school trustees as to proscribe their donation of the services of their vehicles to the public schools under the facts considered.

No facts are presented to show any use of official position by the trustee on the school board to secure any privileges or to engage in any business transaction in substantial conflict with the proper discharge of his duties in the public interest.

Accordingly, in the absence of any facts presented showing improper use of position or the transaction of business in substantial conflict with the proper discharge of duties, both of your questions are answered in the affirmative, and you are advised that the West Independent School District may accept, without cost, from members of its board of trustees:  (a) ambulance services as may be needed at its local school football games,* and (b) automobiles for use in its driver education program and for school district purposes.

### S U M M A R Y

Under the facts stated, the West Independent School District may accept, without cost, from members of its boards of trustees:  (a) ambulance service as may be needed at its local football games, and (b) automobiles for use in its driver education program and for school district purposes.

Very truly yours,

CRAWFORD C. MARTIN
Attorney General of Texas

---

*      The furnishing and functioning of such ambulance service to the local high school football team must, of course, be in compliance with any and all local municipal ordinances applicable thereto. Port Arthur Independent Sch. Dist. v. City of Groves, 376 S.W.2d 330 (Tex.Sup. 1964) (dictum).

Prepared by Austin C. Bray, Jr.
Assistant Attorney General

APPROVED:
OPINION COMMITTEE

Kerns Taylor, Chairman
W. E. Allen, Co-Chairman

James McCoy
Max Hamilton
Rex White
Scott Garrison

SAM McDANIEL
Staff Legal Assistant

ALFRED WALKER
Executive Assistant

NOLA WHITE
First Assistant