

# THE ATTORNEY GENERAL
# OF TEXAS

January 12, 1989

JIM MATTOX
ATTORNEY GENERAL

Honorable Mike Driscoll
Harris County Attorney
1001 Preston, Suite 634
Houston, Texas 77002

Opinion No. JM-1006

Re: Whether a county judge may simultaneously serve as a member of the board of directors of a corporation which does business with the county, and related questions (RQ-1506)

Dear Mr. Driscoll:

You ask the following questions regarding possible conflicts of interest of a county judge:

> May a county judge [of Harris County] serve simultaneously as county judge and as a member of the Board of Directors of a private corporation which contracts or does business with Harris County, the Harris County Flood Control District and/or the Harris County Hospital District?

> Whether the county judge should file an affidavit of substantial interest regarding agenda items relating to his wife's employer, the City of Houston?

In answer to your first question, it is our opinion that the activity you describe creates a conflict of interest contrary to public policy. Inasmuch as we have been informed by letter dated September 28, 1988, from the county judge that effective September 15, 1988, his wife has left her employment with the city, we find it unnecessary to address your second question.

You state that the current county judge in Harris County was first elected to that position in 1975. In 1988 he was elected to the board of directors of Houston Industries, Inc. (HII), and consequently also serves on the board of directors of Houston Lighting and Power (HL&P), a

wholly owned subsidiary of HII.  In  addition to HL&P,  HII is also the  parent company  of  Utility Fuels,  Inc.  (coal supplier), Primary Fuels (oil and gas exploration),  Innovative Controls,  Inc.  (outside lighting  manufacturer),  KBL Communications,  Inc.  (cable  television  supplier),  and Houston Industries Finance, Inc.  (purchaser of HL&P  delinquent bills).

Since his election to the board of directors, the judge has sold  his  stock  in  the company  and  has  filed  many "affidavits of substantial interest" disclosing his position with the companies.  In his capacity as county judge, he has recused himself on many votes taken at county  commissioners court meetings relating to  business between the county  and the companies.  The judge has  also filed a letter with  the corporation waiving "any and all present or future compensation," including expense  reimbursement during  the time  he serves both on the corporation boards and as a county judge.

As detailed in  your brief, there  are frequent  interactions between  HL&P  and  the county.  You  state,  "HL&P constructs, uses and maintains its lines and facilities  on, over, and across virtually  every Harris County road  right-of-way."  We need not recount the many types of interactions between the county  and the  company, but  they include  the county's  payment  of  bills  for  electrical  service;  the acquisition of easements by both parties; the  construction, relocation, repair, and maintenance of both roads and  power lines; and  the  county's  use of  HL&P's  light  poles  for traffic signals.

In addition  to  his  position on  the  HL&P  board  of directors, the county judge sits  on the board of  directors of a nonprofit corporation established to treat indigent and paying AIDS patients  in the county.  The county judge  has informed us by  letter, dated  September 28,  1988, that  he will not receive  any compensation for  his services on  the board of directors  of the nonprofit  corporation.  In  that same letter, the county judge poses the possibility that the county may contract  with the  nonprofit corporation,  while you anticipate that the hospital district may contract  with the corporation for  the care of  indigent AIDS patients  in the county.  We will respond to both possibilities.

Public policy has long prohibited public officers  from holding other positions, executing contracts, or engaging in private activities that conflict  with their public  duties. That policy  has been  engrafted in  the Texas  Constitution

and statutes.  See, e.g., Tex. Const. art. III, §§ 18, 22; V.T.C.S. art. 6252-9b; Local Gov't Code, ch. 171, § 81.002.

The leading Texas case in this area of law is Meyers v. Walker, 276 S.W. 305 (Tex. Civ. App. - Eastland 1925, no writ).  Although that case involved city officials who had a pecuniary interest in a contract, the court's restatement of the public policy behind such prohibitions is instructive to our current inquiry.  The court said:

> These safeguards in letting contracts were not provided with the thought that the public official was corrupt, but that, in the expenditure of public money, the strictest requirement should be followed.  Our law-makers were wise in trying, not only to remove temptation, but to place the public official even above the suspicion of wrong-doing.  The idea of keeping the public in the confidence of the official would bring co-operation and loyalty in the administration of government and enforcement of law, and these principles underlie the security of our government.

Meyers v. Walker, supra, at 307.

That case was grounded in the common law prohibition on public officers' conflict of interest.  However, in 1983 the legislature adopted a mechanism whereby a local public officer could hold an interest in a business entity, declare that interest, and recuse himself on matters concerning that business entity; thus allowing the remainder of the govern- ing body to vote on and conduct business with that entity.  Loc. Gov't Code, ch. 171.  It has been suggested that chapter 171 allows the county judge to sit on the board of directors and recuse himself on county matters pertaining to the corporation.  However, that chapter applies only when a local public official has a "substantial interest" in a business entity or real property, and "substantial interest" is defined in exclusively financial and familial terms.  Loc. Gov't Code § 171.002.  The fact that the county judge has waived all compensation for his services to the corpora- tion removes him from the purview of chapter 171.

Section 81.002 of the Local Government Code requires that prior to undertaking the duties of office, county judges and county commissioners take an oath that they will not be directly or indirectly interested in any contract

with or claim against the county, except as expressly authorized by law.  It was that oath that provided the basis for the holding in another  case where a county officer  had no apparent interest in a questioned contract.  <u>Bexar County v. Wentworth</u>, 378 S.W.2d 126  (Tex.  Civ.  App. - San  Antonio 1964, writ ref'd n.r.e.), involved a county commissioner who had contracted with a voting machine company to be its  sole representative and salesman in the  state except in his  own county and would receive a commission on every machine  sold in the  state,  except those  sold  to his  own  county.  A taxpayer in the county  brought suit to  enjoin the sale  of that company's voting machines  to the  county.  The  court said that the  record was undisputed  that the  commissioner would receive no money from the sale of the machines to  his county.   In  affirming  the  trial  court's  grant  of  the injunction, the court said:

> [The commissioner] is  obligated to give  his best efforts  to  the  carrying  out  of  his appointment, and to  render such services  in connection therewith as may be reasonable and necessary.
>
> .  .  .  .
>
> Under all  of  the  circumstances,  it  is presumed that Ploch was not in a position  to give to  Bexar County  his undivided  loyalty and support in seeing to it that Bexar County got  the  very  best  deal  possible  in  the purchase of 100 new voting machines, when  he was at  the same  time obligated  to use  his best efforts to promote and exploit the  sale of  Shoup voting  machines  throughout  the State, except in Bexar County.  The fact that he was not to receive  any money from such  a sale in Bexar  County would  not prevent  him from having an indirect interest in promoting and exploiting Shoup voting  machines  else-where in the State by a sale in Bexar County.

<u>Bexar County v. Wentworth</u>, <u>supra</u>, at 129.

In that case, as in this inquiry, the ultimate interest of the county  officer is unknown,  and, superficially,  his actions appear  to be  within the  letter of  the law.   The county judge  in the  current instance  is a  director of  a corporation and as such  has a considerably larger  interest in the private company than had the voting machine salesman.

It is well established in Texas law that an individual who sits on the board of directors of a corporation owes to that corporation the exacting duty of a fiduciary. E.g., State Banking Bd. v. Valley Nat'l Bank, 604 S.W.2d 415 (Tex. Civ. App. - Austin 1980, writ ref'd n.r.e.); Canion v. Texas Cycle Supply, Inc., 537 S.W.2d 510 (Tex. Civ. App. - Austin 1976, writ ref'd n.r.e.); Trinity-Universal Insurance Co. v. Maxwell, 101 S.W.2d 606 (Tex. Civ. App. - Austin 1937, writ dism'd).

We believe the logic of the court in the Bexar County case extends to the question before us. The county judge of Harris County is not in a position to give to Harris County his undivided loyalty and support, when he is at the same time obligated to exercise the care of a fiduciary on behalf of the corporation. We conclude that public policy prohibits a county judge from sitting on the board of directors of a corporation that does business with that county.

Our conclusion is buttressed by the public policy prohibition of dual agency. In Scott v. Kelso, 130 S.W. 610 (Tex. Civ. App. 1910) the court opined:

> In all cases the principal is entitled to the best effort and unbiased judgment of his agent, and the law, for reasons founded in public policy, forbids the agent's assumption of a relation which affords temptations antagonistic to his duty.

Scott v. Kelso, supra, at 611.

In Attorney General Opinion O-2929 (1942), this office relied on the quoted language to find that state employees had effectively resigned their public employment when they took positions in the private sector that were in direct competition with their public employment. Again in Attorney General Opinion H-1309 (1978), this office said "public policy severely limits the ability of a public entity to contract with a private entity when the same persons serve in management positions on both. Thus, while one person technically may serve in both capacities, the conflicts of interest thereby raised will often prevent him from acting in both capacities as a practical matter." Id. at 2.

The same public policy applies to business dealings between the Harris County Flood Control District and HL&P or HII, and our conclusion is the same. The Harris County Flood Control District was created under Acts 1937 of the

45th Legislature, chapter 360, at 714.   Section 1 of that act establishes the district as "a governmental agency and body politic and corporate" and designates the commissioners court of Harris County as the governing body of the district.  The county judge is still subjected to the same divided loyalty whether he is sitting as a member of the commissioners court or on the governing body of the flood control district.

We reach the same conclusion in regard to contracts or other business dealings between the county and the nonprofit corporation established to treat AIDS patients.  The fact that the corporation was established not for profit does not affect the public policy considerations:  the county judge has a fiduciary duty to the corporation, and there is no less opportunity for his public duty to conflict with his private interest.  See, e.g., Attorney General Opinions JM-884 (1988); H-1309 (1978); M-714 (1970).  In fact, we can hypothesize that his conflict may be greater in the case of a corporation in whose beneficial goals the public official strongly believes.

The same considerations do not apply, however, to contracts between the AIDS corporation and the Hospital District.

The Harris County Hospital District was established pursuant to article 4494n, V.T.C.S.  The commissioners court appoints the board of managers of the district.  V.T.C.S. art. 4494n, § 5B.  The commissioners court must also approve the district's budget, id. § 8, and all contracts of the district.  Id. § 5b.  The commissioners court may prescribe purchasing and accounting practices of the district.  Id. § 6.

Although, under the statute, the county commissioners court retains some responsibilities in regard to the hospital district, the district is a separate political subdivision of the state.  Bexar County Hosp. Dist. v. Crosby, 327 S.W.2d 445 (Tex. 1959); Attorney General Opinion WW-886 (1960).

The commissioners court does not act as the governing body of the hospital district, which, under the facts presented, may have a continuing contractual relationship with the nonprofit corporation.  We believe that a court would not, as a matter of law, find that a business transaction between the hospital district and the nonprofit corporation is invalid simply because of the county judge's

interest in the corporation.  However, we also believe  that
should such  a contract  be questioned  in a  court of  law,
the court would  examine  it  with the  strict  scrutiny  to
which transactions between  corporations  with  interlocking
directorships are  subjected.  See United Towing  Co.  v.
Phillips, 242 F.2d  627 (5th Cir.),  cert. denied, 78  S.Ct.
93 (1957);  State Banking Bd.  v.  Valley Nat'l  Bank,  604
S.W.2d 415  (Tex.  Civ.  App.  -  Austin  1980,  writ  ref'd
n.r.e.).

## S U M M A R Y

Public policy  prohibits a  county  judge
from simultaneously serving  on the  board  of
directors of a corporation that does  business
with the county, even  where the county  judge
receives no compensation from the corporation.
A county hospital district may contract or  do
business with a corporation on whose board  of
directors a county judge serves.

Very truly yours

JIM MATTOX
Attorney General of Texas

MARY KELLER
First Assistant Attorney General

LOU MCCREARY
Executive Assistant Attorney General

JUDGE ZOLLIE STEAKLEY
Special Assistant Attorney General

RICK GILPIN
Chairman, Opinion Committee

Prepared by Karen C. Gladney
Assistant Attorney General