

## Office of the Attorney General
### State of Texas

**DAN MORALES**
ATTORNEY GENERAL

December 31, 1993

Honorable James L. Anderson, Jr.
Aransas County Attorney
301 North Live Oak
Rockport, Texas 78382

Opinion No. DM-279

Re: Whether a concrete material company owned by a county commissioner may provide services and materials to the county or to another contractor under contract with the county (RQ-295)

Dear Mr. Anderson:

You state that a person who is likely to be appointed county commissioner in the future owns either the majority interest in or all of the stock in a corporation that sells concrete materials. The commissioners court has contracted with a general contractor for extensive runway construction at the Aransas County Airport, and you believe he will purchase materials from the concrete company because it is the only such company in the area.[1] On the assumption that the owner of the concrete company will be a member of the commissioners court when the materials are purchased, you ask whether a concrete material company owned by a county commissioner may provide services and/or concrete materials to the county, or to a contractor performing services to the county under contract. Thus, you inquire about a sale from the concrete company to the county as well as a sale from the concrete company to the contractor who is already under contract with the county.

You wish to know how section 81.002 and section 171.004 of the Local Government Code apply to the facts you have presented. Section 81.002 provides in part:

(a) Before undertaking the duties of the county judge or a county commissioner, a person must take the official oath and swear in writing that the person will not be interested, directly or indirectly, in a contract with or claim against the county except:

(1) a contract or claim expressly authorized by law; or

(2) a warrant issued to the judge or commissioner as a fee of office.

(b) [bond requirement]

---

[1]We assume that the county, in purchasing materials for this project, will comply with any applicable competitive bidding laws. *See* Local Gov't Code §§ 271.021 - 271.030.

> (c) [permitting county judge or county commissioner to serve as member of the governing body or as officer or director of another entity that does business with the county, subject to the provisions of chapter 171].

The special oath required of the county judge and a county commissioner by section 81.002(a) has been in effect since 1876. *See* Acts 1876, 15th Leg., ch. 55, at 51. Prior to 1981, when the precursor of section 81.002(a)(1) was adopted, only the county judge's and county commissioners' fees of office were specifically excepted from the oath provision. *See* Acts 1981, 67th Leg., ch. 527, § 3, at 2230. Public contracts in which a member of the contracting body had a direct or indirect pecuniary interest were against public policy and void, according to the common-law rule applied by Texas courts. *Meyers v. Walker*, 276 S.W. 305 (Tex. Civ. App.--Eastland 1925, no writ); *see also City of Edinburg v. Ellis*, 59 S.W.2d 99 (Tex. Comm'n App. 1933, holding approved); *Bexar County v. Wentworth*, 378 S.W.2d 126 (Tex. Civ. App--San Antonio 1964, writ ref'd n.r.e.); *Starr County v. Guerra*, 297 S.W.2d 379 (Tex. Civ. App.--San Antonio 1951, no writ); *Knippa v. Stewart Iron Works*, 66 S.W. 322 (Tex. Civ. App.--1902, no writ). This rule applied to counties, cities, school districts, and other state and local governmental bodies. *See* Attorney General Opinions H-916 (1976); V-640 (1948).

In 1981 the legislature adopted an exception applicable to the predecessor of section 81.002(a) and to former article 988 V.T.C.S. (1925), which prohibited members of a city council from being "directly or indirectly interested in any work, business or contract, the expense, price or consideration of which is paid from the city treasury." Acts 1875, 14th Leg., ch. 100, at 154 (*repealed by* Acts 1983, 68th Leg., ch. 640, at 4082). The 1981 exception read upon adoption as follows:

> An incorporated city or town or a county may purchase equipment or supplies from a cooperative association to which one or more members of its governing body . . . belongs if no member of the governing body . . . will receive a pecuniary benefit from the purchase except as is reflected in an increase in dividends distributed generally to members of the cooperative association.[2]

Acts 1981, 67th Leg., ch. 527, § 1, at 2229 (revised and recodified 1987) (current version at Local Gov't Code § 271.902). The bill that adopted the provision quoted above also adopted the exception for "such contracts or claims as are expressly authorized by law," now codified as section 81.002(a)(1), Local Government Code. Acts 1981, 67th Leg., ch. 527, § 3, at 2230.

Chapter 171 of the Local Government Code, adopted in 1983, effected a major change in the traditional common-law prohibition against a public officer's direct or

---

[2]This provision overruled Attorney General Opinion H-624 (1975) (commissioners court may not purchase supplies from a farmer's cooperative in which a commissioner owns a small share).

indirect interest in a public contract entered into by the governing body to which the officer belonged. Acts 1983, 68th Leg., ch. 640, § 1, at 4079 (adopting predecessor of chapter 171 as V.T.C.S. art. 988b (1925); *see generally* Attorney General Opinion JM-424 (1986)). Chapter 171 permits local governing bodies to enter into contracts in which a member of the governing body has a "substantial interest" as defined by section 171.002, but the "interested" public officer must comply with section 171.004 of the Local Government Code, which provides as follows:

> (a) If a local public official has a substantial interest in a business entity[3] or in real property, the official shall file, before a vote or decision on any matter involving the business entity or the real property, an affidavit stating the nature and extent of the interest and shall abstain from the further participation in the matter if:
>
> > (1) in the case of a substantial interest in a business entity the action on the matter will have a special economic effect on the business entity that is distinguishable from the effect on the public; . . .

A "local public official" includes the following:

> *a member of the governing body* or another officer . . . *of any* district (including a school district), *county*, municipality, precinct, central appraisal district, transit authority or district . . . .

Local Gov't Code § 171.001(1) (emphasis added).

A local public official commits an offense by knowingly violating section 171.004, *id.* § 171.003(a)(1), but this violation will not invalidate the contract unless the measure would not have passed the governing body without his vote. *Id.* § 171.006. This enactment modifies the strict common-law rule that would have invalidated the contract even if the public officer had not participated. It permits the transaction but forbids the interested officer from participating in it, enforcing this requirement by a criminal penalty. *Id.* § 171.003.

The legislature has not expressly repealed section 81.002 of the Local Government Code, but the apparent overlap of this provision with chapter 171 of the Local Government Code raises an issue of implied repeal. Section 81.002 requires the county judge and county commissioners to take an oath that they will not be interested in contracts with the county, but chapter 171 permits the county to enter into contracts in which these officers are interested. *See* Local Gov't Code § 171.001(1) (defining "local public official" to include a member of the governing body of a county).

---

[3]"Business entity" is defined as "a sole proprietorship, partnership, firm, corporation, holding company, joint-stock company, receivership, trust, or any other entity recognized by law." Local Gov't Code § 171.001(2).

In Attorney General Opinion JM-1090 (1989) this office attempted to harmonize these two provisions, concluding that the provisions of chapter 171 impliedly repealed those of 81.002 to a certain extent. On review of Attorney General Opinion JM-1090, we believe that it correctly concluded that chapter 171 prevails over section 81.002, but that its reasoning is erroneous. In particular, Attorney General Opinion JM-1090 was incorrect in stating that a contract entered into under chapter 171 was "'a contract . . . expressly authorized by law.'" As we have pointed out, the quoted language was adopted in a bill that authorized a county to purchase equipment or supplies from a cooperative association to which a member of the commissioners court belonged. *See* Local Gov't Code § 271.902. A contract to purchase equipment or supplies from a cooperative association is necessarily a contract "expressly authorized by law." The terms of the authorizing law are specific as to the subject matter of the contract and the kind of entity with which the county contracts. Chapter 171 does not have that kind of specificity. Assuming that the commissioners court has authority under another statute or a constitutional provision to contract with a business entity or with regard to real estate, chapter 171 permits the commissioners court to enter into the contract even though a member of the court has a personal pecuniary interest in it. As a consequence of characterizing contracts made pursuant to chapter 171 as contracts "expressly authorized by law," Attorney General Opinion JM-1090 reached the doubtful conclusion that a county could enter into contracts in which a county commissioner had a "substantial interest" within chapter 171, but could not enter into contracts in which a county commissioner had a lesser interest.

In our opinion, chapter 171 and section 81.002 may be correctly harmonized by reading chapter 171 to authorize a county to enter into contracts or take actions in which a member of the commissioners court is pecuniarily interested to the same extent that other local governmental bodies may take such actions. Thus, if a county commissioner or county judge has a substantial interest in a business entity that will be subject to a vote or decision by the commissioners court, he must file the affidavit required by section 171.004 and abstain from participation in a matter if "action on the matter will have a special economic effect on the business entity that is distinguishable from the effect on the public." Local Gov't Code § 171.004. If his interest in a business entity is less than a substantial interest, the interested member of the commissioner's court may participate in an action affecting the business entity. Chapter 171 creates an exception in the oath required by section 81.002 to the extent that it permits a county judge or county commissioner to have a direct or indirect interest in a contract with or claim against the county.[4]

---

[4]Chapter 171 of the Local Government Code applies to county contracts involving a "business entity" in which a county judge or county commissioner is interested. Local Gov't Code § 171.002(a), (b). It is an open question whether an attempt by a county judge or a county commissioner to sell property owned in his personal capacity would involve a "business entity" within chapter 171. Thus, it is possible that chapter 171 would not authorize a county commissioner to sell, for example, his automobile to the county, and section 81.002 and the common-law rule would continue to prohibit such transactions. *See Starr County v. Guerra*, 297 S.W.2d 379 (Tex. Civ. App.—San Antonio 1951, no writ) (county commissioner unlawfully employed as road commissioner was not entitled to receive salary). *But see* 35

The legislative history of chapter 171 shows that it was meant to apply to members of the commissioners court just as it applies to members of other local governmental bodies. Its enactment was recommended by the Public Servant Standards of Conduct Advisory Committee, a body established by statute to study laws on the conduct of public servants and to recommend revisions to the legislature. *See generally* Attorney General Opinion JM-424 (1986). The committee's report stated as follows:

> Local officers--elected and appointed officers in city *and county government*, some special districts, and school districts--perform the same types of functions as state officers and are open to the same types of conflicts of interest, centering around voting, purchasing, and contracts. The full committee eventually recommended solutions that were based on a form of financial disclosure with abstention from participation.

BACKGROUND REPORT ON LOCAL OFFICERS' CONFLICT OF INTEREST PROBLEMS, published in FINAL REPORT OF THE PUBLIC SERVANT STANDARDS OF CONDUCT ADVISORY COMMITTEE at 17 (August 1983) (in Legislative Reference Library) (emphasis added).

In 1989, the legislature adopted House Bill 1976 to overturn Attorney General Opinion JM-1006 (1989), which determined that public policy and section 81.002 barred a county judge from serving on the board of directors of a private corporation that did business with the county.[5] House Comm. on County Affairs, Bill Analysis, H.B. 1976, 71st Leg. (1989); Senate Comm. on Intergovernmental Relations, Bill Analysis, C.S.H.B. 1976, 71st Leg. (1989). It added the following provision to section 81.002 of the Local Government Code:

> (c) *Subject to the provisions of Chapter 171*, the county judge or a county commissioner may serve as a member of the governing body or as an officer or director of another entity, except:
>
> > (1) a publicly traded corporation; or
>
> > (2) a subsidiary, affiliate, or subdivision of a publicly traded corporation;
>
> that does business with the county.

---

(footnote continued)
D. BROOKS, COUNTY AND SPECIAL DISTRICT LAW § 18.37 (Texas Practice 1989) (suggesting that definition of "business entity" includes an individual selling property or contracting in his own name).

[5]House Bill 1976 also added section 171.009 to the Local Government Code, allowing any local public official to serve as a member of the board of directors of private, nonprofit corporations if the official serves without compensation or other remuneration.

Acts 1989, 71st Leg., ch. 475, § 1, at 1647-48 (emphasis added).[6]

The italicized language of section 81.002(c) shows that chapter 171 applies to county contracts. The bill analysis prepared for the Senate Committee on Intergovernmental Relations also shows the legislature's understanding that chapter 171 applied to members of the commissioners' court:

> The Local Government Code sets out standards designed to regulate conflicts of interest of officers of municipalities, *counties*, and certain other local governments. The laws provide that a local public official commits a Class A misdemeanor (1) if that official (*i.e.*, elected or appointed, paid or unpaid member or offices of any district, *county*, municipality, etc.) has a substantial interest . . . in a business entity, and (2) that official participates in a decision that would confer likely economic benefit on the business . . . .

Senate Comm. on Intergovernmental Relations, *supra* (emphasis added).

Chapter 171 is not the only enactment that has impliedly modified section 81.002 of the Local Government Code or its predecessors. A 1935 amendment to article XVI, section 61 of the Texas Constitution placed county officers in counties of 20,000 or more on a salary basis, *requiring their fees to be paid into the county treasury*. H.J.R. 6, Acts 1935, 44th Leg., at 1235. Section 81.002(a)(2), which excepts only "a warrant issued to the judge or commissioner *as a fee of office*," was not amended. Local Gov't Code § 81.002(c) (emphasis added). County commissioners and the county judge nonetheless may receive the salary, expenses, and benefits authorized by other law. *See* Local Gov't Code § 152.011; Attorney General Opinions MW-110 (1979); H-992 (1977).

Article 2529c, V.T.C.S., adopted in 1967, Acts 1967, 60th Leg., ch. 179, at 370, permits the state and political subdivisions to choose a depository bank even though members of the body selecting it own stock in it or serve as its officers or directors. This statute expressly modifies the common law, but does not mention the county commissioners' and judge's oath provision. Nevertheless, this office has held article 2529c applicable to the county's contract with its depository. Attorney General Opinions MW-505 (1982); H-596 (1975). Chapter 171 *also modifies the special oath required by section 81.002(a)*.

We will address your specific questions. We will assume that the owner of a concrete materials corporation will be a member of the commissioners court at the time the county or the contractor purchases materials from his corporation. You have informed us that the owner of the corporation has at least a majority interest in it, which would be

---

[6]We assume that the concrete materials company in question is not a publicly traded corporation or subsidiary of a publicly traded corporation. Accordingly, we will not consider the application of section 81.002(c) to the situation you have presented.

"a substantial interest in a business entity" within chapter 171 of the Local Government Code. *See* Local Gov't Code §§ 171.001(2), 171.002. He will be subject to the following provision:

> the official [who is substantially interested in a business entity] shall file, before a vote or decision on any matter involving the business entity . . . , an affidavit stating the nature and extent of the interest and shall abstain from the further participation in the matter *if*:
>
> > (1) in the case of a substantial interest in a business entity the action on the matter will have a special economic effect on the business entity that is distinguishable from the effect on the public.

Local Gov't Code § 171.004 (emphasis added).

Ordinarily, we cannot decide in the opinion process whether an action of the commissioners court "will have a special economic effect on the business entity" because this decision requires the investigation and resolution of fact questions. However, if the county decides to buy materials from the corporation owned entirely or in large part by the commissioner, we believe that this decision will, as a matter of law, "have a special economic effect on the . . . [corporation] that is distinguishable from the effect on the public." Accordingly, the county commissioner will have to file the affidavit and abstain from further participation in the matter, including participation in discussions leading up to a vote or decision on the contract. *See* Attorney General Opinion JM-379 (1985).

If the county's general contractor purchases materials from the concrete corporation, section 171.004 of the Local Government Code will apply if the commissioners court takes any action involving the concrete business that "will have a *special economic effect on the business entity that is distinguishable from the effect on the public.*" We are unable to determine from the facts that you have provided whether the commissioners court will take any such actions.

Attorney General Opinion JM-1090 is modified to the extent it is inconsistent with this opinion.

## S U M M A R Y

> Chapter 171 of the Local Government Code authorizes a county to enter into contracts or take actions in which a member of the commissioners court is pecuniarily interested to the same extent that other local governmental bodies may take such actions. Section 81.002 of the Local Government Code, which requires the county judge and each county commissioner to take an oath that he will not be directly or indirectly interested in a contract with the county, is impliedly repealed to the extent it is inconsistent with chapter 171.

Honorable James L. Anderson, Jr. - Page 8 (DM-279)

If Aransas County decides to buy materials from a corporation owned entirely or in large part by a member of the commissioners court, this decision will, as a matter of law, "have a special economic effect on the . . . [corporation] that is distinguishable from the effect on the public." The county commissioner who owns the corporation will have to file the affidavit and abstain from further participation in the matter, including participation in discussions leading up to a vote or decision on the contract.

Attorney General Opinion JM-1090 (1989) is modified to the extent it is inconsistent with this opinion.

Very truly yours,

DAN MORALES
Attorney General of Texas

WILL PRYOR
First Assistant Attorney General

MARY KELLER
Deputy Attorney General for Litigation

RENEA HICKS
State Solicitor

MADELEINE B. JOHNSON
Chair, Opinion Committee

Prepared by Susan L. Garrison
Assistant Attorney General