

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-23-00416-CV

———————————————

JAMES EDLAND, Appellant

V.

TOWN OF CROSS ROADS, TEXAS, Appellee

---

On Appeal from the 362nd District Court
Denton County, Texas
Trial Court No. 22-0056-362

---

Before Sudderth, C.J.; Womack and Walker, JJ.
Memorandum Opinion by Justice Womack

# MEMORANDUM OPINION

## I. INTRODUCTION

Appellant James Edland was the former police chief of the Northeast Police Department (NEPD), which was created by agreement between Appellee Town of Cross Roads, Texas, and the City of Krugerville, Texas. After NEPD was dissolved, Edland became police chief of Krugerville and sued Cross Roads for breach of contract, alleging that he was entitled to severance pay. In one issue, Edland complains that the trial court erred by granting Cross Roads's motion for summary judgment. We will affirm.

## II. BACKGROUND

### A. After creation of NEPD, Edland signs a contract to be its police chief.

According to Edland, NEPD was established in 2013 as a "common municipal police department" as a result of an agreement between Cross Roads and Krugerville (the interlocal agreement). On October 17, 2013, Edland entered into a contract (the contract) to be the police chief of NEPD. The contract was signed by Edland and Mike Starr as chair of the "Northeast Police Department Commission"; it was not signed by either municipality.

By its terms, the contract was "effective commencing on October 1, 2013 and shall expire on September 30, 2014." However, "[u]nless prior 30 days' written notice of an intent not to renew [was given] by either party," the contract renewed

automatically and was "term commensurate with the term and duration" of the interlocal agreement.

If the contract was not renewed or "in the event that the Chief [was] separated from employment for any reason other than just cause," then Edland was entitled to "severance pay equal to four months' salary at the rate on the date of separation from employment as well as an additional one months' salary (at the same rate) for each full year that the Chief has been employed by the Department." The contract also provided that "[i]n the event that [NEPD] ceases to continue as a joint police department, or in any event of dissolution of the Department," Edland "may elect to continue employment as Chief of Police for [Krugerville] or [Cross Roads], at the Chief's option."

The contract stated that it did not waive "governmental, official, sovereign, qualified, or other immunities or defenses" held by NEPD or Edland. It also provided that nothing in the contract "shall in any way be deemed or construed to grant, confer or create any right or interest in any person not a party to" the contract. According to the contract, it was "binding on [NEPD] and [Edland] as well as their heirs, assigns, executors, personal representatives and successors in interest."

**B. NEPD ceases to exist, and Edland becomes Krugerville's police chief.**

In 2021, Cross Roads and Krugerville decided that NEPD would not continue.[1]  Cross Roads alleged that this was based on Krugerville's unexpected termination of the interlocal agreement.

Edland's last day of employment as NEPD's police chief was September 30, 2021.  Effective October 1, 2021, he entered into a separate contract with Krugerville to become its police chief.  He began his employment with Krugerville on that same day.

**C. Edland sues Cross Roads for breach of contract.**

In January 2022, Edland sued Cross Roads, alleging that he was entitled to severance pay as a result of his service as NEPD police chief.  Edland contended that NEPD "was owned and operated" by Cross Roads and Krugerville, "was not a

---

[1]In its motion for summary judgment, Cross Roads stated, "On March 26, 2021, the City of Krugerville unexpectedly delivered to Cross Roads a notice of termination of the Interlocal Agreement.  The notice of termination informed Cross Roads that Krugerville was terminating the Interlocal Agreement on September 30, 2021 – one year sooner than the agreed upon term."  There was no summary judgment evidence establishing these facts.  However, it appears undisputed that NEPD was terminated in 2021, as Edland's declaration, which was attached to his summary judgment response, provided, "In 2021 it was decided between [Krugerville] and [Cross Roads] that the [NEPD] would not continue."  In addition, Edland's discovery responses, which were attached as summary judgment evidence, admitted that "NEPD's last day of existence was September 30, 2021," and that Cross Roads and Krugerville "voluntarily dissolved the NEPD."

4

separate jural entity capable of being sued," and was "administered by a Board of Commissioners [(Board)] whose members were named by each of the municipalities."

Edland stated that he was "separated from his employment with [NEPD] when it was decided [that] each respective municipality would provide law enforcement separately." Although Edland acknowledged that he did not miss a day of employment, he stated that he was "owed severance in the amount of $125,628[] (4 months' salary plus an[] additional month for each of my 8 years' service; $10,469 x 12 = $125,628)."[2] In addition to severance pay, Edland sought his attorney's fees.

## D. Cross Roads answers and files its motion for summary judgment.

Cross Roads answered the lawsuit with a general denial as well as several affirmative defenses, including governmental immunity, impossibility, novation, and lack of condition precedent. Cross Roads filed a plea to the jurisdiction and a supplemental plea to the jurisdiction. Later, it also filed a traditional and no-evidence summary judgment motion. After Cross Roads filed its motions, Edland filed his motion for partial summary judgment, wherein he sought judgment on his claim against Cross Roads for breach of his employment contract.

With regard to the no-evidence portion of its motion, Cross Roads argued that there was no evidence that: (1) there was a contract between Edland and Cross

---

[2] In his discovery responses attached as summary judgment evidence, Edland admitted that he was "fully compensated pursuant to Section VII.A. of the agreement for [his] services as the Chief of NEPD in the month of September 2021."

Roads, (2) Edland's contract was breached, and (3) Edland had any damages. In its traditional motion, Cross Roads asserted that the evidence conclusively established that it did not breach the contract and/or that Edland suffered no damages. Cross Roads also moved for summary judgment on its affirmative defenses of (1) lack of condition precedent—arguing Edland was never separated from employment and the contract was not renewed, and (2) impossibility—arguing that dissolution of NEPD and Edland's employment by Krugerville made contract renewal impossible. Attached to the motion were the contract between Edland and NEPD, the interlocal agreement, Edland's responses to discovery, Edland's contract with Krugerville, text messages between Edland and Krugerville's mayor, and a letter from Krugerville's attorney.

Edland and Cross Roads each responded to the pending summary judgment motions. Attached to Edland's response were the contract between Edland and NEPD, the interlocal agreement, and Edland's declaration. After a hearing on Edland's and Cross Roads's motions for summary judgment, the trial court denied Edland's motion and granted Cross Roads's motion without stating the bases of its ruling and entered an order to that effect. This appeal followed.

6

## III. DISCUSSION

In one issue, Edland argues that the trial court erred by granting summary judgment.[3]

## A. Summary judgment law and standard of review

We review a summary judgment de novo. *Helena Chem. Co. v. Cox*, 664 S.W.3d 66, 72 (Tex. 2023), *cert. denied*, 144 S. Ct. 199 (2023); *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010). No-evidence and traditional grounds for summary judgment may be combined in a single hybrid motion. *Binur v. Jacobo*, 135 S.W.3d 646, 650–51 (Tex. 2004). When a trial court grants both a no-evidence and a traditional motion for summary judgment and the record does not reveal the grounds on which the trial court may have granted judgment, we review the no-evidence grounds first. *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004).

In a no-evidence motion for summary judgment, the party without the burden of proof may, without presenting evidence, move for summary judgment on the ground that there is no evidence to support an essential element of the nonmovant's

---

[3]Edland groups his arguments into three "sub-issues": (1) plea to the jurisdiction, (2) no-evidence motion for summary judgment, and (3) traditional motion for summary judgment. With regard to the first "sub-issue," although Cross Roads did file a plea to the jurisdiction, the trial court's order granted only the summary judgment motion. *See* Tex. R. App. P. 33.1(a)(2). According to the docket sheet, the trial court heard only the motions for summary judgment; it had denied Cross Roads's plea to the jurisdiction at an earlier hearing. Because the order appealed from only granted Cross Roads's motion for summary judgment, we do not address the first sub-issue dealing with the plea to the jurisdiction. Moreover, it is not necessary to final disposition of this appeal. *See* Tex. R. Civ. P. 47.1.

claim or defense. Tex. R. Civ. P. 166a(i). The motion must specifically state the elements for which there is no evidence. *Id.*; *Timpte Indus., Inc. v. Gish*, 286 S.W.3d 306, 310 (Tex. 2009). The court must grant the motion unless the nonmovant presents evidence raising a genuine issue of material fact as to the elements specified in the motion. *See* Tex. R. Civ. P. 166a(i) & cmt.; *Helena Chem. Co.*, 664 S.W.3d at 72; *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006).

When reviewing a no-evidence summary judgment, we examine the entire record in the light most favorable to the nonmovant, indulging every reasonable inference and resolving any doubts against the motion. *Sudan v. Sudan*, 199 S.W.3d 291, 291 (Tex. 2006). We review a no-evidence summary judgment for evidence that would enable reasonable and fair-minded jurors to differ in their conclusions. *Hamilton v. Wilson*, 249 S.W.3d 425, 426 (Tex. 2008). We credit evidence favorable to the nonmovant if reasonable jurors could, and we disregard evidence contrary to the nonmovant unless reasonable jurors could not. *Timpte Indus., Inc.*, 286 S.W.3d at 310. If the nonmovant brings forward more than a scintilla of probative evidence that raises a genuine issue of material fact, then a no-evidence summary judgment is not proper. *Smith v. O'Donnell*, 288 S.W.3d 417, 424 (Tex. 2009).

Where a no-evidence motion for summary judgment is granted, a reviewing court will sustain the summary judgment if "(a) there is a complete absence of evidence of a vital fact, (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (c) the evidence

8

offered to prove a vital fact is no more than a mere scintilla, or (d) the evidence conclusively establishes the opposite of the vital fact." *Sw. Bell Tel., L.P. v. Emmett*, 459 S.W.3d 578, 589 (Tex. 2015) (quoting *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003)).

## B. Breach of contract law

The essential elements of a breach of contract claim are (1) the existence of a valid contract, (2) performance or tendered performance by the plaintiff, (3) breach of the contract by the defendant, and (4) damages sustained as a result of the breach. *Berdin v. Allstate Ins. Co.*, No. 02-22-00426-CV, 2023 WL 7037619, at *6 (Tex. App.— Fort Worth Oct. 26, 2023, no pet.) (mem. op.).

Our primary concern in interpreting a contract is to ascertain and give effect to the intent of the parties as it is expressed in the contract. *Seagull Energy E & P, Inc. v. Eland Energy, Inc.*, 207 S.W.3d 342, 345 (Tex. 2006). To achieve this objective, "courts should examine and consider the entire writing in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless." *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 662 (Tex. 2005).

Whether a contract is ambiguous is a question of law for the court. *Heritage Res., Inc. v. NationsBank*, 939 S.W.2d 118, 121 (Tex. 1996). The interpretation of an unambiguous contract is a question of law for the court. *MCI Telecomm. Corp. v. Tex. Utils. Elec. Co.*, 995 S.W.2d 647, 650 (Tex. 1999). Generally, we "give terms their plain, ordinary, and generally accepted meaning unless the instrument shows that the

9

parties used them in a technical or different sense." *Heritage Res., Inc.*, 939 S.W.2d at 121. An unambiguous contract is construed according to the plain meaning of its express wording. *Dorsett*, 164 S.W.3d at 662.

"A contract is ambiguous when its meaning is uncertain and doubtful or is reasonably susceptible to more than one interpretation." *Heritage Res., Inc.*, 939 S.W.2d at 121. Whether a contract is ambiguous is decided by examining the contract as a whole in light of the circumstances present when the contract was entered. *Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd.*, 940 S.W.2d 587, 589 (Tex. 1996). If contract language can be given a certain or definite meaning, then it is not ambiguous, and it is interpreted by a court as a matter of law. *Universal Health Servs., Inc. v. Renaissance Women's Grp., P.A.*, 121 S.W.3d 742, 746 (Tex. 2003) (citing *DeWitt Cnty. Elec. Coop., Inc. v. Parks*, 1 S.W.3d 96, 100 (Tex. 1999)).

## C. Analysis

In the no-evidence part of their summary judgment motion, Cross Roads first contended that it was not a party to the contract and that it did not execute the contract.[4] Specifically, it alleged that there was "no evidence of any of the required

---

[4]Cross Roads frames its non-party argument as a privity issue. However, Edland argues in his reply brief that a challenge to privity of contract is an issue of capacity which requires a verified pleading, *see* Tex. R. Civ. P. 93(1), and that Cross Roads's privity was "inadequately pleaded and waived." In response, Cross Roads complains that Edland made this argument for the first time in a reply brief, and therefore, it cannot be considered. *See Anderson Producing Inv. v. Koch Oil Co.*, 929 S.W.2d 416, 424 (Tex. 1996); *Bookout v. Shelley*, No. 02-22-00055-CV, 2022 WL 17173526, at *12 (Tex. App.—Fort Worth Nov. 23, 2022, no pet.) (mem. op.) ("[I]t is

elements for a binding contract as to Cross Roads and Edland's NEPD agreement: 1) no offer; 2) no acceptance; 3) no meeting of the minds; 4) no communication of consent to terms of agreement; and 5) no executed agreement between [Edland] and Cross Roads." Cross Roads also urged that Edland is ignoring the part of the contract that provides that "nothing in the agreement shall in any way be deemed or construed to grant, confer or create any right or interest in any person not a party to this Agreement."[5]

---

well settled that courts cannot consider arguments raised for the first time in a reply brief.").

We need not decide the issue here because the substance of Cross Roads's assertion—that Edland cannot recover for breach of contract because Cross Roads was not a party to the contract—was addressed in the cross-motions for summary judgment without objections and adjudicated prior to trial. *See Basic Cap. Mgmt., Inc. v. Dynex Com., Inc.*, 348 S.W.3d 894, 899 (Tex. 2011) (stating that the failure to file a verified denial under Texas Rule of Civil Procedure 93(2) did not preclude a party from contesting an opposing parties' right to recover as non-parties because the substance of the assertion was addressed in cross-motions for summary judgment and adjudicated prior to trial).

[5]Cross Roads states that Edland was also informed prior to entry of the contract that the contract was not binding on Cross Roads. In fact, Cross Roads included in its plea to the jurisdiction an email sent to Edland in 2013 which attached an email from Cross Roads's attorney stating,

> I recognize the Chief's concerns regarding the possible termination of the Krugerville-Cross Roads interlocal agreement and the potential dissolution of the department. Unfortunately, there is no way that an agreement between the Chief and the Northeast Police Department could be binding on Krugerville or Cross Roads. Even if we were to insert a clause that required each city to employ the chief, that clause could not be used to accomplish its purpose. Neither Krugerville nor Cross Roads are parties to this agreement.

11

In response, Edland focused on the fact that the interlocal agreement was entered into to create a "common municipal police department" and that the Board acted as representatives of Cross Roads and Krugerville. He also pointed to a provision in the Texas Local Government Code that provides the following:

> A local government entity that is authorized by statute or the constitution to enter into a contract and that enters into a contract subject to this subchapter waives sovereign immunity to suit for the purpose of adjudicating a claim for breach of the contract, subject to the terms and conditions of this subchapter.

Tex. Loc. Gov't Code Ann. § 271.152; *see id.* §§ 271.151, .155. Edland argued that Cross Roads is a Type A general-law municipality that "may sue and be sued, implead and be impleaded, and answer and be answered in any matter in any court or other place." *See id.* § 51.013. He also contended that whether a city is a party to a contract entered by its "servient agency" can be determined as a matter of law. *See Delta Elec. Constr. Co. v. San Antonio*, 437 S.W.2d 602, 605 (Tex. App.—San Antonio 1969, writ ref'd n.r.e.) ("We hold that the Water Board is an agency and department of the City and therefore the contract in question was a contract with the City."); *but see San Antonio Water Sys. v. Smith*, 451 S.W.3d 442, 450 (Tex. App.—San Antonio 2014, no pet.) (concluding that the San Antonio Water System is not an agency of the City).

---

In response to a request for admission which was attached as summary judgment evidence, Edland stated that he "admits that such appears to be the opinion of NEPD legal counsel" but that he "does not have an independent recollection of whether these are the emails received and no longer has access to this email account."

This case turns on whether NEPD and the individual who signed the contract on behalf of NEPD could bind Cross Roads. *See City of San Benito v. Rio Grande Valley Gas Co.*, 109 S.W.3d 750, 757 (Tex. 2003) ("Cities can express and bind themselves only by way of a duly assembled meeting."). While "[a] city's governing body may not delegate the right to make decisions affecting the transaction of city business," cities may "delegate to others the right to perform acts and duties necessary to the transaction of the city's business, but can do so only by resolution or ordinance, by a majority vote." *Id.* (quoting *Cent. Power & Light Co. v. City of San Juan*, 962 S.W.2d 602, 613 (Tex. App.—Corpus Christi 1998, pet. dism'd w.o.j.)).

Here, NEPD—not Cross Roads—was clearly the party to the contract, and the contract was signed only by Edland and "Mike Starr, Chair[,] Northeast Police Department Commission." While Edland argues on appeal that the contract "cannot be read in isolation" but "must be considered with the interlocal agreement," he fails to examine all of the provisions of the contract and interlocal agreement. *See Fort Worth Indep. Sch. Dist. v. City of Fort Worth*, 22 S.W.3d 831, 840 (Tex. 2000) (pointing to "well-established law that instruments pertaining to the same transaction may be read together to ascertain the parties' intent" and stating that "even if the parties executed the instruments at different times and the instruments do not expressly refer to each other," a court "may determine, as a matter of law, that multiple documents comprise a written contract").

13

The interlocal agreement stated that it was created pursuant to the "Interlocal Cooperation Act, Chapter 791, Texas Government Code, as amended." It also provided that the "affairs" of NEPD "shall be administered by a six (6) member Board of Commissioners"—two from Krugerville and four from Cross Roads—and that the commissioners "shall be named thereto as the representative of that contracting municipality by formal resolution of the governing body of each contracting municipality." Among their enumerated powers, the Board could, "[t]o the extent permitted by law, enter into such contracts" to effectuate its purposes and powers, but "may not, without written resolution or ordinance adopted by the governing body of each contracting municipality, incur any obligation that may be binding on either municipality."

Moreover, the contract expressly provided that it was binding on NEPD and could not "in any way be deemed or construed to grant, confer or create any right or interest in any person not a party" to the contract. It also did not waive "governmental, official, sovereign, qualified, or other immunities or defenses" and was binding only on NEPD and Edland and their "heirs, assigns, executors, personal representatives and successors in interest."

Importantly, Edland attached only the contract, interlocal agreement, and his declaration to his summary judgment response. While the contract reflected that it was signed by "Mike Starr, Chair[,] Northeast Police Department Commission," there was no evidence—such as the "formal resolution" cited in the interlocal agreement—

14

showing who Starr was or whether he was authorized to sign the contract. *See* Tex. Loc. Gov't Code Ann. § 271.151(2)(a) (providing that a "contract subject to this subchapter" is defined as "a written contract stating the essential terms of the agreement for providing goods or services to the local governmental entity that is properly executed on behalf of the local governmental entity"); *see also El Paso Educ. Initiative, Inc. v. Amex Props., LLC*, 602 S.W.3d 521, 533 (Tex. 2020) ("[J]ust as a government official cannot bind the government to a contract based on apparent authority, an agent acting on behalf of a charter-holder cannot bind it in a way that exceeds its statutory grant of authority to enter into contracts." (footnote omitted)). In addition, even though the interlocal agreement said that NEPD was governed by a "Board of Commissioners," the contract did not purport to be signed by a member of the Board. Moreover, there was no evidence—such as the "written resolution or ordinance"—showing that NEPD had authority to incur any financial obligation on Cross Roads's behalf.

In order to qualify as a contract, the document must evidence the parties' intent to be bound. *City of Houston v. Williams*, 353 S.W.3d 128, 143 (Tex. 2011). Here, the contract did not show that Cross Roads intended to be bound by it. In response to Cross Roads's assertion that there was no evidence that it was a party to the contract, Edland failed to offer evidence, as required by the interlocal agreement, that (1) Starr had authority to bind Cross Roads, and (2) Cross Roads had, by written resolution or ordinance adopted by its governing body, agreed to the obligations set out in the

15

contract. *See Saum v. City of Coll. Station*, No. 10-17-00408-CV, 2020 WL 7688033, at *5 (Tex. App.—Waco Dec. 22, 2020, pet. denied) (mem. op.) (quoting *Base-Seal, Inc. v. Jefferson Cnty.*, 901 S.W.2d 783, 788 (Tex. App.—Beaumont 1995, writ denied)) ("[P]ersons or entities contracting with governmental units are charged by law with notice of the limits of the authority of the governmental unit and are bound at their peril to ascertain if the contemplated contract is properly authorized."). Therefore, there was a "complete absence of evidence of a vital fact," *see Sw. Bell Tel., L.P.*, 459 S.W.3d at 589 (quoting *King Ranch, Inc.*, 118 S.W.3d at 751), and the trial court did not err by granting the no-evidence summary judgment motion. *See Bernard Johnson, Inc. v. Cont'l Constructors, Inc.*, 630 S.W.2d 365, 369 (Tex. App.—Austin 1982, writ ref'd n.r.e.) (stating that, as a general rule, a suit for breach of contract may not be maintained against a person who is not a party to the contract).

Because we have concluded that the trial court properly granted Cross Roads's no-evidence motion for summary judgment on the no-contract element of Edland's breach-of-contract claim, we need not address the remaining elements of the challenged claim. *See* Tex. R. App. P. 47.1. We also need not address Edland's challenge to the trial court's ruling on traditional grounds. *See id.*; *see also Cmty. Health Sys. Prof'l Servs. Corp. v. Hansen*, 525 S.W.3d 671, 680–81 (Tex. 2017) ("If the nonmovant fails to produce more than a scintilla of evidence on the essential elements of a cause of action challenged by a no-evidence motion, there is no need to analyze the movant's traditional grounds for summary judgment.").

16

## IV. CONCLUSION

Having overruled Edland's sole issue, we affirm the trial court's judgment.

/s/ Dana Womack

Dana Womack
Justice

Delivered:  June 6, 2024